**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| J.L., an individual;<br><br>      Plaintiff<br><br>  -against-<br><br>BEST WESTERN INTERNATIONAL, INC.; HYATT CORPORATION; WYNDHAM HOTELS AND RESORTS, INC.; AND MARRIOTT INTERNATIONAL, INC.;<br><br>      Defendants. | CIVIL ACTION NO :<br><br>**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY AND BRIEF IN SUPPORT** |

**PLAINTIFF C.K.'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY AND BRIEF IN SUPPORT**

  The Plaintiff, J.L., through her undersigned counsel, respectfully moves this Court for an order permitting her to bring this action anonymously and to protect her identity from public disclosure. The Plaintiff submits the following brief in support of her motion.

**BRIEF IN SUPPORT**

  The Plaintiff, C.K., is a survivor of sex trafficking bringing an action for damages against the Defendants, whom are all members of the hospitality industry, under 18 U.S.C §1595 enacted by the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA"). The Plaintiff herein seeks a protective order and leave to proceed anonymously because the disclosure of her identity would cause her undue harm.

  For several weeks in 2016, the Plaintiff was advertised online under an alias, ferried between hotels, and required to perform commercial sex acts while enduring brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at the hands of her trafficker. The Plaintiff refrains from naming her trafficker in this application and in her complaint for the same reasons she herein requests a protective order and leave to proceed anonymously – fear of retaliation by her trafficker.

Furthermore, the Plaintiff's status as a victim of sex trafficking is highly sensitive, personal, and private, information that implicitly exposes the Plaintiff as a prostituted person as well as a victim of repeated sexual abuse. Requiring the Plaintiff to disclose her identity in public court records in order to assert her claims against those who facilitated her victimization through their willful ignorance to her plight only serves to further victimize the Plaintiff and compound the same harms she seeks to redress through this litigation.

The Plaintiff agrees to proceed through her initials, J.L., and does not object to providing her true full name and the name of her trafficker to the Defendants pursuant to a protective order barring further dissemination of that information and requiring that any documents containing her true name be filed under seal. Accordingly, granting the Plaintiffs motion will in no way prejudice the Defendants' ability to defend themselves in this litigation. In addition, the Plaintiff's substantial privacy interest regarding this deeply personal violation outweighs the public interest in needing to know her identity.

## ARGUMENT

Although a complaint must usually state the names of all parties pursuant to Fed. R. Civ. P 10(a), Courts have nevertheless "carved out a limited number of exceptions to the general requirement of disclosure, which permit plaintiffs to proceed anonymously." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). The Tenth Circuit embraces a balancing test evaluating "(1) if the case involves matters of a highly sensitive and personal nature; (2) real danger of physical harm; (3) or where the injury litigated against would be incurred as a result of the disclosure of the identity." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The various Courts of Appeals have applied a number of specific factors in employing this balancing test. Overall, the district court must "exercise its discretion in the course of weighing competing interests" whilst using a factor-driven balancing approach. *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

The factors from the "non-exhaustive" list of competing factors most recently compiled by

Second Circuit in *Sealed v. Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) from the decisions of its sister Circuit Courts, which are relevant to the Plaintiff's application for anonymity include: (1) "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature,' " *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), and *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (2) "whether identification poses a risk of retaliatory physical or mental harm to the…party [seeking to proceed anonymously]," *Jacobson*, 6 F.3d at 239 (4th Cir. 1993); (3) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure," *see Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068; (4) "whether identification presents other harms and the likely severity of those harms" including whether "the inquiry litigated against would be incurred as a result of the disclosure of the Plaintiff's identity," *Sealed*, 537 F.3d 185, 190 (2d Cir. 2008) citing *Advanced Textile Corp.*, 214 F.3d at 1068 and *Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); (5) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," *Doe v. Del Rio*, 241 F.R.D. 154, 157 ; and (6) "whether the defendant is prejudiced by allowing the plaintiff to press her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court," *see Advanced Textile Corp.*, 214 F. 3d at 1068.  Balancing the factors above strongly favors protecting J.L. throughout the instant litigation with the use of a pseudonym.

### I. Disclosure of the Plaintiff's identity would reveal information that is of a highly sensitive and personal nature putting her at a substantial risk of discrimination and harassment.

The Plaintiff has a substantial privacy right in guarding the sensitive information about her past abuse that she must disclose in the present sex trafficking litigation. "The issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant […and] [o]f course privacy interests are recognized in particular circumstances to be in the public interest." *Zavaras*, 139 F.3d at 803.  A plaintiff is only permitted to "proceed anonymously in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical

harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.

The Plaintiff was only seventeen (17) years old when she was coerced into sexual servitude by a man that she met at a festival in Denver, Colorado. For weeks thereafter she was repeatedly beaten, berated, and forced to sexually service as many as twelve (12) men a day. Fortunately, J.L. is now able to live a drastically different life. However, inherent in publicly categorizing J.L. as a victim of sex trafficking is the revelation of her having been prostituted by her trafficker.  While it is certainly misguided, a great deal of stigma and scrutiny follow such a disclosure.  If her identity is revealed, the Plaintiff is likely to experience harm ranging from humiliation or other discrimination to physical violence. Prostituted women have disturbingly low status in the field of public opinion regardless of how the situation came to pass.  As one sex buyer in a research interview explained, "A prostitute is like having a cup of coffee, when you're done, you throw it out."[1] Prostituted women are seen as body parts whose feelings are irrelevant. They are not considered fully human and as a result, prostituted women are murdered at a higher rate than any other group of women ever studied.[2] And the public view of prostituted women does not consider whether they are there or have been there as a result of sex trafficking.

## II. Disclosing the Plaintiff's identity would subject her to a significant risk of retaliation by her trafficker.

The Plaintiff has a protected interest in guarding her personal safety against "a real danger of physical harm." *Frank*, 951 F.2d 320 (11th Cir. 1992) J.L. suffered *substantial* psychological and physical abuse at the hands of her trafficker and his associates.  The Plaintiff's trafficker was criminally investigated by law enforcement and was later prosecuted by the Arapahoe County District Attorney's Office for the offenses he committed against the Plaintiff who was kept confidential.  He was adjudicated guilty by a jury

---

[1] Melissa Farley et al, Comparing Sex Buyers with Men Who Do Not Buy Sex: New Data on Prostitution and Trafficking, Journal of Interpersonal Violence, (2015) 32 (3), 3601–25 at 3613
[2] Melissa Farley, The Risks of Prostitution: When the Person is the Product, Journal of the Association for Consumer Research, December 19, 2017, 3 (1) 97-108 at 99.

and was sentenced in August of 2016 to 24 years to life. According to the Colorado Department of Corrections J.L.'s trafficker will be eligible for parole in 2038. The Plaintiff's debilitating fear stems from the knowledge that her trafficker's associates still have not been apprehended and 18 years is not that far off. The Plaintiff has a credible fear that the facts disclosed in the instant litigation would cause her to be easily identifiable. Given the level of horrific abuse the Plaintiff suffered at the hands of her trafficker, her fear of retaliation by him or his associates warrants attention especially if his release might be imminent.

### III. As a victim of sex trafficking the Plaintiff is particularly vulnerable to the likely harms of disclosure.

The Plaintiff is particularly vulnerable to the harms inherent in disclosure, not only in her fear of retaliation, but given her repeated past victimization. J.L. stands to suffer if her identity is released as a result of her seeking to hold those who knowingly benefitted from her exploitation accountable. In *Doe v. Stegall*, the Fifth Circuit weighed the "gravity of the danger posed by the threats of retaliation … in light of the special vulnerability of [the] child-plaintiffs." 653 F.2d 180, 186 (5th Cir. 1981) Survivors of sex trafficking who speak openly about the offenses that they were subject to, explain that it took a lot of difficult work to reach that point.[3] Even at the most advanced stages of recovery many survivors are not willing to go public with their story.  Survivors are just barely surviving, and are therefore uniquely vulnerable.  They are struggling with "reliving the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by feelings of shame and guilt, thinking that they are living in hiding and unable to let themselves to truly be seen, and experiencing fleeting feelings of dignity and respect."[4]  J.L. does not speak openly about her past victimization and instead tries to maintain the normal life she was so viciously deprived of. Because the Plaintiff is not open about her past, the disclosure of her true identity can decimate her recovery and the life she has built for herself.

---

[3] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5. This guide is written by a well-published survivor of sex trafficking and is attached as Exhibit 1.
[4] *Id* at 3.

Victims of sex trafficking are especially vulnerable in the current age of technology wherein every opinion waged is an opinion heard. Traffickers are experts in psychological manipulation, they use degrading and dehumanizing tactics to keep victims enslaved. To family and society, the victims are viewed as a disgrace. They are shamed as sluts and outcasts and this strong stigma keeps them in their place as they live on the margins of a society that has cast them out.[5] To subject C.K. to such unsolicited feedback, when all she seeks from the instant litigation is to come a step closer to being made whole again, is cruel and unduly burdensome.

### IV. Disclosure of the Plaintiffs identity would subject her to other harms including the harms being litigated

The insidiousness of the offense of sex trafficking is that the abusers steal from the victims their sense of privacy, autonomy, and normalcy. A litigation pursued under the TVPRA is an important step for survivors to recover what was taken from them. To demand that these survivors publicly disclose their identity and their history in order to pursue a legal opportunity statutorily provided to them specifically as victims of sex trafficking only continues to harm them. To require that the Plaintiff disclose her identity as woman who has been imprisoned, beaten, and forced into prostitution only serves to again deprive her of privacy, autonomy, and normalcy.

### V. There is an atypically weak public interest in knowing the identity of the Plaintiff, allowing the privacy rights of the Plaintiff to outweigh the presumption of openness in judicial proceedings

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d 180 at 185 (5th Cir. 1981) "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is

---

[5] *Id* at 4.

not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc. v. Virginia*, 448 US 555 (1980). The public interest is not harmed by allowing the Plaintiff to proceed anonymously, and the interest itself is an atypically weak one. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording victimized plaintiffs such as J.L. their day in court without the bullying of corporations who hope to deter her litigation through the force of identification. *See Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). The enforcement of federal sex trafficking laws benefits the public, and the identification of the individual plaintiffs does little, if not nothing, to further community welfare. The particular identity of Roe in Roe v. Wade has little bearing on the nature of the dispute or the merits of the case.

Instead, the greater public interest would be significantly harmed if identifying J.L., and other victims like her looking to pursue this cause of action provided by the TVPRA, resulted in an overall chilling effect upon all sex trafficking litigation. Sex trafficking is a growing epidemic that is already difficult to combat and understand because it is vastly underreported. Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *See Advanced Textile*, 214 F. 3d at 1073. Denying victims of sex trafficking anonymity in the appropriate circumstances – such as here – would only further allow the offenders to continue without detection by the law as they have done for decades.

### VI. Granting the Plaintiffs motion will not compromise the Defendant's ability to present a full defense

The Defendants would not be prejudiced if the Plaintiff's motion were granted. The Defendants are corporate entities that lack the vulnerability that the Plaintiff faces as a singular victim of repeated sexual abuse, particularly in an era where publicly-filed documents are easily searchable online. Anonymity in this case, as was proffered in *James v. Jacobson*, would be limited to the pseudonym that the Plaintiff uses, not to who she is in every other respect. 6 F.3d 233, 243 (4th Cir. 1993). As previously mentioned, J.L. is willing to provide her full name and the identity of her trafficker to the Defendants,

under a tailored protective order.

## **CONCLUSION**

For the forgoing reasons, the Court should grant the Plaintiff's motion to file under the initials "J.L.," and should further order that all materials filed in the action, all judgments, and any other documents relating to the action shall refer to the Plaintiff as "J.L.," without additional identifying information.

          **RESPECTFULLY SUBMITTED,**
          **PLAINTIFF,**
          **By Her Attorneys,**

          _s/ C.J. Cuneo_____

          C.J. Cuneo (CO Bar No. 52041)
          Andrus Wagstaff, PC
          7171 W Alaska Drive
          Lakewood, CO 80226
          Phone: (303) 376-6360
          Fax: (303) 376-6361
          Cj.cuneo@andruswagstaff.com

# EXHIBIT 1




# Understanding the 4 Stages of Recovering from Sex Trafficking

As I conduct anti-human trafficking work, I look back on my own recovery from sex trafficking and I notice that advocates and victims/survivors may not quite understand what it takes to recover, as well as, how long it takes to truly be set free. I'd like to address both advocates and victims/survivors, to help them better understand each other. Ninety percent of the work that was done to set them free came from the victim/survivor. The other ten percent came from a community of people who were willing to do their part. They were used as commodities to increase their traffickers' and/or employers' income and status. They must not be used as commodities to promote an organization's status or increase its income. Value what they have to offer because others can learn from their valuable insight.

***To Organizers/Advocates:*** Understanding these four stages will give you an idea of what you need to consider before requesting a human trafficking (HT) victim/survivor to tell their story at your event or organization.

Some key items to remember are below:

- Revisiting their past is not easy, especially at first, but empowering them to tell their stories is key to setting them free.
- Telling their stories for the first time must be done with a qualified professional.
- Telling their stories can be healing for them, however, not handled with care, can re-traumatize them.
- Discussions with groups is done as a service to educate and also as a way to heal from their traumas.
- If they are in the beginning stages of recovery, revisiting their past can trigger them and cause them to regress, back into a dark place and/or relapse back into silence. If this occurs, it may require counseling from a qualified therapist before they are ready to tell their story to groups (if ever).
- If they are in advanced stages of recovery, revisiting their past evokes feelings of great pride for overcoming everything they've been through, and feelings of gratefulness for surviving it all.
- The more they tell their stories, (whether privately or publicly) the easier it becomes. Eventually it becomes only a story to them, one that doesn't haunt them anymore.
- Keep in mind that despite them reaching advanced stages in recovery, they may not be willing to go public with their story. Follow their lead and don't pressure them.

© 2017 All rights reserved, Ruth Rondon.

1



## The more victims/survivors we empower to break the silence, the more perpetrators will be sent running.

- They must be given space to decipher what feels safe to them, regarding their anonymity.
- It is very important that if you intend to record or photograph them, you need their full consent.
- They need to know if the media was invited to the event and if it's open to the public. Include them in any emails and notices that go out announcing the event.
- Respect their time and efforts.
- Don't take credit away from them by introducing them as someone who has been "rescued" or "saved" from human trafficking. You can save a victim from a dangerous situation, but no one can save or rescue anyone from human trafficking. Understand it is very offensive and demeaning to victims/survivors when others claim credit for all the work THEY did to overcome.
- They should be treated like any other professional speaker and offered a stipend to show respect for their time. They should be reimbursed for expenses.
- Even though some may be willing to donate their time, don't expect them to work for free. Let them make that decision. They worked for free while being trafficked. They didn't have the freedom to make decisions or use their own judgment. We need to do the opposite of that.
- Give them the freedom they need and deserve to voice their concerns and use their own judgment. Answer all of their questions.
- Give them the time they need to prepare for the event and understand that they have the freedom, and the right, to change their minds, even at the last minute.

T*o Victims/Survivors:* This article may help you recognize your own victimization, signaling the work you need to do to recover and also what you can look forward to at the end of the tunnel. If you think you may be a victim/survivor and/or if this article brings up topics or concerns, bring this to your counselor/therapist to get the necessary conversations started.

Some key items to remember are below:

- Before you accept an invitation to tell your story at an event or when you sit down with a counselor/therapist, remember people will not always be empathetic, including trained professionals
- Human trafficking is a dark subject and hearing the stories can evoke personal emotions in your listeners. However, empathy does not come naturally, it's acquired. If some can't empathize, it can feel hurtful, but don't take it personally. Understand it's their lack of training or capacity that keeps them from being able to respond to you in the needed way. It has nothing to do with you. It has everything to do with them.
- When considering opening up publicly, make sure you are strong enough to handle it if some persons cannot relate to your struggles. Make sure you have the support you need before, during, and after your speech.

© 2017 All rights reserved, Ruth Rondon.

2

pg. 11



- Speaking out about your experience is only one way you can help fight human trafficking. If you don't want to tell your story to groups, there are other ways you can offer your gifts and insights.
- Don't let others pressure you into doing something you don't feel comfortable doing. You can give back by volunteering as a mentor, organizer (of events), advocate for victims/survivors and/or help with clerical work at human trafficking organizations.

### 1. Victim/Outcast

First, they are victims and then they become outcasts. They were probably abused/and or neglected as children which made them easy prey for traffickers and were recruited into sex trafficking. They may have never been abused but were recruited by trusting a boyfriend, husband or a potential employer. They are subjected to on-going trauma, which may include one, some, or all of the following below.

These unaddressed traumas cause any victim to be fearful and to hang their heads in shame. They live in survival mode.

- physical, psychological and emotional abuse
- beatings
- degradation
- humiliation
- torture
- rapes
- gang rapes
- their healthcare needs are probably going unmet

While being trafficked, they navigate through life with the victim mindset. They have blinders on and they can't see that they're victims; all the while their trafficker is exploiting and abusing them. Their reality is distorted and they believe the empty promises given to them by their trafficker. They become dependent on their trafficker as their protector, provider and/or employer; all the while they're looking forward to a false, bright future. They find excuses for why their trafficker beats them and belittles them as a way to deny the abuse and to remain hopeful about their future. They become accustomed to managing their traffickers' moods and emotions to avoid beatings and/or retaliation. They don't see this as out of the ordinary and they justify their traffickers' bad behavior. They believe in their trafficker and they do everything their trafficker tells them to do. They cooperate with the trafficker when he/she isolates them from family and resources. They don't know how to stand up for themselves and many times they don't see the need to. They remain loyal to their trafficker. They have a disproportionate need for approval from their abusers because to them their approvals mean "they are safe for now". They believe their trafficker will protect them from the police and/or immigration. Traffickers threaten to call police or immigration if their victims don't comply with their demands or "keep them happy". Victims may acquire a criminal record as a result of trusting their trafficker and/or trying to keep him/her happy. They may become drug addicted and are supplied drugs by their

© 2017 All rights reserved, Ruth Rondon.                                                                         3



trafficker (to keep them more controllable). They may have dropped out of school. They believe they don't fit in anywhere which sets them apart from society and they suffer from relational poverty. They have no sense of belonging.

To family and society, they are a disgrace. Some are even trafficked by their own families. They are slut-shamed and outcast. The strong stigma keeps them in their place. They are victimized by authority figures and come to believe there is no hope for them. They've come to know, all too well, the potential corruption and abuse of power that exists in every profession. This adds to their dependency on their trafficker and contributes to their relational poverty. They may come to view those with degrees and titles as better than them and more believable. They learn to trust no one except their trafficker. They live on the margins of society and their addiction becomes a coping mechanism.

They haven't yet considered escaping from their trafficking situation or their abusers, nor have they considered asking for help because they believe that staying with their trafficker is the safest choice they have.

## 2. Survivor

In this stage, they've already asked for help because they believe there may be a chance to escape. They are beginning to doubt their trafficker's seemingly good intentions; that he/she is not concerned about their future and welfare. They are living in a safe place. They are no longer being victimized or traumatized. They may be experiencing withdrawals but are working on overcoming their addiction. They have a circle of supporters surrounding them but in their minds, they are still just surviving because they may be struggling with the following::

- Reluctant to fall asleep because of nightmares
- Relive the traumas over and over through flashbacks
- Intrusive and negative thoughts are overwhelming to them
- Shame, guilt, and fear overwhelm them
- They don't understand their own thoughts and feelings
- May feel like they are "living in hiding" and they won't allow themselves to "truly be seen"
- They have severe abandonment and trust issues are present and need to be addressed
- Built up anger is confusing to them
- Experience fleeting feelings of dignity and respect and they don't quite know what to make of it because they may never have felt dignified or respected before and/or they feel they don't deserve it
- Minds are spinning with questions about their lives and their mere existence

BUT now, at least they are looking for work or going to school, or both, and they're safe. Medical and legal needs are being addressed. They are learning life skills - how to budget money, balance a checkbook, cook and/or drive. Perhaps they are perfecting their English. They may be continuing their education in school.

© 2017 All rights reserved, Ruth Rondon.

4



From time to time they're tempted to go back to their trafficker and "the life", to what's familiar, because they doubt their abilities to make it in society. They have thoughts of using drugs again to escape the flashbacks, to help them sleep, or to just feel better. They receive counseling and start the process of getting acquainted. But they must feel safe with him/her, before counseling will be beneficial. They may need to find another counselor and start the getting-acquainted-process all over again, several times because they didn't "click" with the previous counselor. They have to "click" before it will be a fruitful relationship. Finding just the right counselor takes time. Victims and survivors have a hard time recognizing a mutually satisfying relationship even after they've escaped "the life". They are still vulnerable to falling prey to someone who doesn't have their best interests in mind.

Also, it's a reality that some counselors:

- find it too difficult to resist the temptation and they take advantage of their clients' naivety, vulnerabilities and a disproportionate need for approval and they re-exploit them
- They don't understand what sex trafficking victims need therapeutically and they unknowingly re-exploit them
- Pass judgement on them

## Finding just the right counselor is the hardest part of recovering from sex trafficking

### 3. Thriver

Work is secured and they are taxpayers and contributing members of society. They have their own place and are living more independently and out of survival mode. They look forward to a promising future and continuing their education and/or have graduated. They are now a subordinate at work and learning the dynamics of, and the difference between, professional and personal relationships. They know their traffickers' true, malicious intentions. They're determined to never go back to "the life" or their trafficker.

Through counseling they're doing the difficult, inner work to understand:

- How they fell prey to traffickers
- What fears are holding them back in life and where they stem from
- What their children need from them; how to be a good parent
- The push and pull dynamics between them and their trafficker, boss, co-workers, family, and friends
- What it took for them to escape and survive trafficking
- Why they survived
- That some consequences of their past are permanent
- They are facing their fears with the help of their counselor and they are processing their traumas
- Their childhood traumas
- Their adult traumas

© 2017 All rights reserved, Ruth Rondon.                                                                 5



During this phase, they are really learning a whole new way of communicating - a whole new language. Trauma escapes language and causes memory loss; so they need help in finding the words to express themselves so they can tell their stories and also so they can process their traumas. Finding the right words helps them turn the flashbacks (triggers of bad memories) into just memories that don't haunt them anymore, so they can move forward.

They are learning how to:

- Be patient with themselves and others
- Label their emotions
- Go within, listen to their gut feelings and that voice inside of them
- Express themselves in a respectful way
- Set boundaries without being too aggressive or too passive
- Recognize and mend past, healthy relationships
- Maintain healthy, present relationship
- Develop new, healthy relationships
- Recognize and let go of unhealthy relationships
- stand up for themselves and recognize when it's necessary

**Victims of human trafficking carry an untold story inside them that even they can't make sense of or put into words. Articulating their stories occurs only in advanced stages of recovery.**

### 4. Victor/ Leader

The blinders are off and they've reached "the other side". They are leaders in their own lives. They've faced their fears, processed their traumas and came to understand and accept themselves and others. They know they've been victimized and they understand how they fell prey. They've acquired good communication skills and they know how to set boundaries. They are careful whom they allow into their lives and they navigate through life with their eyes and ears open. They don't take people only at face value. They look beneath the surface of good and bad behavior, positive and negative labels, prestigious titles and degrees. They are no longer easy prey. Others have forgiven them for their wrongs and they've come to forgive themselves and others. They take responsibility for their past choices. The shame has been released and they walk with their heads held high. They're excited about life. They are embracing their survival and are grateful they survived everything they've been through. They want to pass what they've learned on to others. They want to make a difference in the lives of others.

They don't have to be leaders in anti-human trafficking work, to be viewed as leaders. They can be leaders in many ways: such as mothers/fathers leading their children; a leadership position at work; start their own business; and/or be leaders in sales of a product or service.

© 2017 All rights reserved, Ruth Rondon.                                                                                              6



They've discovered their potential and they know what their talents are. They know where their strengths and weaknesses lie and they feel comfortable in their own skin. They live boldly and with less fear. They face life's crises with discernment and by reaching out to their supporters and resources. They aren't afraid to ask for help when they know they need it. They understand that crises and hard times are only temporary, just as much as good times are. They look at the big picture and they see hope in everything they set out to accomplish or overcome.

They may still have bad dreams, but they wake up knowing they are safe. The bad memories that used to trigger them into becoming fearful again, are now just memories that no longer haunt them. They know what they like and don't like and they have found the words to accurately express it.

The fear of public speaking (stage fright) subsides only with experience. During this stage, they may have already had public speaking training and/or experience.

*I was stuck in stage three for over 20 years. Now, I stay in stage four most of the time, but I toggle back and forth from stages 3-4 because I am still learning.*

Keep in mind:

**Prevention is going to be a lot easier than intervention.**
Once a victim gets lost in the life they don't see themselves as victims, so they don't ask for help; and they have to ask for help before they will be open to anything positive. Plus, once lost in the life, there's already a lot of psychology damage done. It takes a long time to heal from the traumas they've been subjected to.

<p style="color:red; text-align:center;"><b>No short-term individual intervention will save a victim from sex trafficking. A short-term prevention measure CAN prevent a victim from falling prey.</b></p>

- We do not all fall prey to traffickers in the same way nor do we escape in the same way. All of our stories are unique.
- For many victims, experience with corrupt authority fosters mistrust of anyone who inquires about their trafficking situation.
- Some (in all stages of recovery) may have court cases pending and are not at liberty to talk about them and therefore cannot tell the whole story
- Some may have their legal issues and trigger/trauma issues addressed and can now tell the whole story and even change the way their story ends.

© 2017 All rights reserved, Ruth Rondon.                                                                                      7



### About the Author

Ruth Rondon is a member of the Michigan Human Trafficking Health Advisory Board appointed by Governor Rick Snyder in 2016. She wrote her autobiography, The Realities of Human Trafficking: From the Inside Out to Freedom, and is a human trafficking subject matter expert and professional speaker.

Ms. Rondon has co-authored two cutting-edge Human Trafficking eLearning programs, that are trauma-informed and victim-centered, based in part on Ruth's personal experience (it covers sex and labor trafficking). The curriculum provides 20 micro-learning lessons that include a victim story, lesson (based on research), and 1-2 actions to take that day. The Learning Aid, which is unique to each program, provides ways to interact with and identify victims. If you have 3 minutes, check out one of the lessons:



Human Trafficking Awareness for First Responders/Safety Officers (Law Enforcement): W.A.R. on Slavery
Human Trafficking Awareness for Healthcare: W.A.R. on Slavery
Our Education program will be released in 2018

You may contact with Ruth Rondon several ways:
1. Email: Ruth@HumanTraffickingElearning.com
2. Our website: www.HumanTraffickingElearning.com/Ruth-Rondon
3. Twitter: #WARonSlavery
4. Facebook: Ruth Rondon on Human Trafficking
5. LinkedIn Ruth Rondon
6. For HT stats, check out: Pinterest

To learn more: Human Trafficking eLearning Program Previews and Descriptions
www.humantraffickingelearning.com/training

https://app.avanoo.com/spa/corp/?qq=first3/662#/first3/662



In partnership with:

MPHI®

events.mphi.org/ht

© 2017 All rights reserved, Ruth Rondon.

8