IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03713-STV

J.L., an individual

        Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC.;
HYATT CORPORATION;
WYNDHAM HOTELS AND RESORTS, INC.; AND
MARRIOTT INTERNATIONAL, INC.

        Defendants.

---

## DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS

---

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Wyndham Hotels & Resorts, Inc. ("WHRI"), by and through its undersigned counsel, moves to dismiss Plaintiff's complaint, and in support thereof states as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCivR 7.1 and STV Practice Standard V., undersigned counsel certifies that the parties conferred as to the substance of this motion. Plaintiff opposes the relief sought in this motion.

### I.    PRELIMINARY STATEMENT

Plaintiff asserts a civil claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), alleging that Defendant Wyndham Hotels & Resorts, Inc. ("WHRI") knowingly

benefited from its participation in a venture with unidentified criminal traffickers who allegedly trafficked Plaintiff on the premises of a La Quinta®-branded hotel during a two-week period in 2016. WHRI is now the ultimate parent corporation of the franchisor of the La Quinta® brand of guest lodging facilities. The Complaint lacks well-pled factual allegations sufficient to support a claim against WHRI. Among other deficiencies, the Complaint does not allege that the hotel, let alone WHRI, knew of, shared a common purpose with, or participated in a "venture" with the traffickers. Four cases with similar allegations were dismissed as to franchisor and parent company defendants, including WHRI, in the Northern District of Georgia. *See, e.g.*, Minute Entry (Dkt. 241), *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR (N.D. Ga. Feb. 7, 2020) ("The Court rules the timely motions to dismiss filed by the franchis[o]rs and argued today will be GRANTED . . . ."). This Complaint should also be dismissed as to WHRI.

## II.   STATEMENT OF PLAINTIFF'S ALLEGATIONS

The Complaint alleges that Plaintiff was subjected to sex trafficking in 2016 by criminal traffickers at multiple Denver-area hotels, including a La Quinta®-branded hotel in Greenwood Village, Colorado (the "Facility"). *See* Dkt. 1, at ¶¶ 55-56. The Complaint alleges that, to prevent "exposure" of their criminal activities, the traffickers "shuttled" Plaintiff between the hotels, presumably to avoid detection of their conduct. *See* Dkt. 1, at ¶¶ 59, 73. Plaintiff, according to the Complaint, was trafficked at the Facility for a two-week period during which the alleged traffickers refused "maid service," except on one occasion when Plaintiff was not in the room. *See* Dkt. 1, at ¶ 68. The Complaint speculates that the Facility's housekeepers "would have" detected Plaintiff's alleged victimization. *See* Dkt. 1, at ¶ 68. The Complaint alleges further that Plaintiff

ate breakfast at the Facility, and that—in one instance—there were noise complaints in response to which the hotel's front desk asked if "everyone was okay." *See* Dkt. 1, at ¶¶ 68-69.

The Complaint alleges that, as of 2018 (two years after the alleged trafficking), La Quinta Holdings, Inc. (a holding company) was acquired by, and became a wholly-owned subsidiary of, WHRI. *See* Dkt. 1, at ¶ 11(b). The Complaint then attempts to explain the venture required for a TVPRA claim, alleging that WHRI "receives a percentage of gross room revenue from the money generated by the operations" of the Facility. Dkt. 1, at ¶ 11(g). The Complaint also alleges that WHRI, since 2018, has owned the La Quinta® brand, and did not kick this hotel out of its system. *See* Dkt. 1, at ¶¶ 11(c), 43, 47-49. The crux of the Complaint is that the hospitality industry is generally aware that commercial sex activity sometimes occurs at hotels, and should do more to combat the societal problem. *See, e.g.*, Dkt. 1, at ¶ 1.

### III.    LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In reviewing a motion to dismiss under Rule 12(b)(6), "the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative." *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1044 (D. Colo. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191

(10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  Courts, therefore "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Id.*  Allegations made on "information and belief" are given no weight in determining the sufficiency of a pleading.  *See, e.g.*, *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013).

## IV.    ARGUMENTS & AUTHORITIES

Plaintiff asserts a single claim under the TVPRA. The TVPRA is a criminal statute that can give rise to civil claims. *See* 18 U.S.C. §§ 1591(a), 1595(a). Section 1595 triggers civil liability for those who commit sex-trafficking crimes and defendants who "knowingly benefit[] . . . from participation in a venture" that commits sex-trafficking crimes while the defendant knew or should have known that the venture was committing such crimes.  *See* 18 U.S.C. § 1595(a) (providing that a defendant is civilly liable under the TVPRA if, *inter alia*, the defendant "participat[ed] in a venture . . . [that] has engaged in" sex-trafficking crimes in violation of Section 1591(a)).  As an initial matter, the Complaint acknowledges that WHRI was not associated with the La Quinta® brand until 2018, two years after Plaintiff was allegedly trafficked at the La Quinta® hotel at issue. *See* Dkt. 1, at ¶ 11(c).  Accordingly, WHRI could not have knowingly benefited from or participated in a venture that trafficked Plaintiff.  Even if WHRI had been associated with the La Quinta® brand, the Complaint does not include well-pled allegations sufficient to state a claim under the TVPRA, and the Complaint should be dismissed.

### A.    The Complaint Does Not Allege That WHRI Participated In A Venture.

One of the elements for a civil sex-trafficking claim under the TVPRA is a defendant's "participation in a venture" that committed sex-trafficking crimes against the plaintiff.  18 U.S.C.

§ 1595(a).  "Participation" requires some "overt act" in furtherance of the trafficking; nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient.  *See, e.g.*, *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (holding that "participating in a venture" requires "some overt act," and that "mere negative acquiescence" is not enough); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Because guilt, or in this case liability, cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture.").  "In other words, some participation in the sex trafficking act itself must be shown." *Noble*, 335 F. Supp. 3d at 524.  Construing the phrase "participation in a venture" otherwise would "create a vehicle to ensnare conduct that the statute never contemplated."  *Afyare*, 632 F. App'x at 286.

Furthermore, a TVPRA "venture" only exists insofar as there is a common "purpose" among the participants.  *See, e.g.*, *Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019).  The Tenth Circuit's decision in *Bistline* and its discussion of the First Circuit's decision in *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) are instructive.  In *Ricchio*, as described by the Tenth Circuit, motel operators (the Patels) and an alleged trafficker (McLean) "had previously collaborated in unspecified 'commercial dealings.'"  *Bistline*, 918 F.3d at 874.

> While Ms. Ricchio was captive [at the motel], 'McLean and Mr. Patel enthusiastically expressed intent to reinstate these commercial dealings by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels.  Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious deterioration.  And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.'

*Id.* (quoting *Ricchio*, 853 F.3d at 555) (internal alterations omitted).  In other words, the First Circuit found that the complaint adequately alleged that the motel operators knowingly benefited from participating in a sex-trafficking venture because they "knowingly" rented the room to the trafficker "*for the purpose*" of trafficking the plaintiff. *Ricchio*, 853 F.3d at 555-56.

In *Bistline*, drawing from the First Circuit's *Ricchio* decision, the Tenth Circuit overturned the dismissal of a TVPRA claim against lawyers for the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS").  The Tenth Circuit based its determination on allegations that the lawyers "had ample notice of the illegal activities which were taking place within the FLDS community while they were actively seeking to enforce [Warren] Jeffs' control and simultaneously protecting him from any liability." *Bistline*, 918 F.3d at 874.  The Tenth Circuit noted further that the "scheme set up by [the lawyers] was designed *expressly for the purpose of facilitating* [Jeffs'] crimes and also ensuring that [the lawyers] would personally reap ample benefits therefrom," and that "despite extensive knowledge of the ways Mr. Jeffs was using his power to harm plaintiffs and other similarly-situated individuals, defendants continued to use their legal expertise to uphold this scheme." *Id.* at 874-75.

The "common purpose" requirement for a TVPRA "venture" is consistent with the holdings in both *Bistline* and *Ricchio*, and it comports with standard canons of statutory construction.  As recognized by the 10th Circuit, the TVPRA defines the term "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019) (quoting 18 U.S.C. § 1591(e)(6)).  That definition closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act, as both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6)

(defining "venture" as "any group of two or more individuals **associated in fact**, whether or not a legal entity" (emphasis added)) *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals **associated in fact** although not a legal entity" (emphasis added)).   And where, as here, Congress uses similar language in two statutes, "it is appropriate [for courts] to presume that Congress intended that text to have the same meaning in both statutes."  *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu.").

The Supreme Court and the Tenth Circuit have both long recognized that, for persons to be "associated in fact" and thus constitute an "enterprise" under RICO, they must be "associated together for a **common purpose**."  *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017); *cf. Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) ("The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act [].").   It therefore follows that, in determining whether a defendant has "associated in fact" with others for purposes of participating in a TVPRA "venture," the inquiry depends in part on whether the alleged members of the venture "associated together for a common purpose."  *Turkette*, 452 U.S. at 583; *Boyle v. United States*, 556 U.S. 938, 944 (2009) ("That an '**enterprise**' must have a purpose is apparent from the meaning of the term in ordinary usage, *i.e.*, a '**venture**,' 'undertaking,' or 'project.'  The concept of 'association' requires both interpersonal relationships and a common interest." (internal citations omitted) (emphasis added)).   Courts routinely recognize that mere business transactions (e.g., loans, the sale of goods, or—in this

case—the rental of a hotel room, etc.) without more do not give rise to a reasonable inference that the participants in such transactions shared any "common purpose."[1]

Here, the Complaint lacks any allegation plausibly suggesting that WHRI or persons working at the Facility shared any "common purposes" with the alleged traffickers. To the contrary, the allegations in the Complaint suggest that the traffickers undertook efforts to conceal their illicit activities from hotel staff, indicating that they shared no common purpose with hotel staff and thus did not participate in a TVPRA "venture" with them. At most, the Complaint alleges that the Facility was used as an instrumentality of the traffickers' illicit activities, which is insufficient to support a plausible inference that WHRI or persons working at the Facility participated in a TVPRA "venture." *See supra* note 1 and accompanying text. The Complaint should be dismissed as to WHRI.

---

[1] *See, e.g.*, *Cirino v. Bank of Am., N.A.*, CV 13-8829 PSG MRWX, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (finding allegations that vendors were used as "instrumentalities" to carry out an alleged RICO enterprise were insufficient to show the vendors themselves shared in a common purpose with the alleged enterprise); *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The only factual allegation supporting this claim is that BoC provided 'indispensable banking services' to IFS and Siu Lap. The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose."); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2:11-CV-07166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) ("At the risk of being glib, this allegation amounts to one that 'Countrywide offered to buy something, and the lenders obliged.' Western and Southern [have] identified exactly the type of arms-length business transaction, with each party pursuing its own economic interests, that does not constitute a RICO enterprise."); *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016) ("Without an indication that the cooperation in this case exceeds that inherent in every commercial transaction, the Complaint provides no basis for inferring that the Defendants were conducting the enterprise's affairs and not their own, independent interests." (internal quotations and alterations omitted)).

**B.      The Complaint Does Not Allege That WHRI "Knowingly Benefited."**

For liability to arise under Section 1595(a) of the TVPRA, a defendant must knowingly benefit *from* its participation in a venture that commits trafficking crimes.  18 U.S.C. § 1595(a).  Benefits that do not stem directly from the alleged trafficking itself, and are not knowingly received in exchange for participating in the alleged venture, are not sufficient.  *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) ("In other words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship."); *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("Nor have Plaintiffs offered evidence to show that Defendants were compensated 'on account of' the sex acts. . . . The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient . . . .").

WHRI could not have benefited—knowingly or otherwise—from Plaintiff's alleged trafficking.  Even as alleged in the Complaint, WHRI was not affiliated with the La Quinta® brand until two years after Plaintiff's alleged trafficking.  *See* Dkt. 1, at ¶¶ 11(c).  Moreover, where (as here) there are no well-pled allegations that the defendant participated in a venture, a defendant necessarily cannot "knowingly benefit[] . . . *from* participation in a venture."  18 U.S.C. § 1595(a) (emphasis added).  That the traffickers allegedly rented a room at the Facility, without allegations giving rise to a plausible inference of a common purpose, is insufficient.  The Complaint should be dismissed as to WHRI.

**C.**  **The Complaint Does Not Allege Facts Plausibly Suggesting That WHRI Or Persons Working At The Facility Knew Or Should Have Known About Plaintiff's Trafficking.**

Even assuming *arguendo* that the Complaint had adequately alleged that WHRI or persons working at the Facility knowingly benefited from participation in a sex-trafficking venture (it does not), the Complaint should still be dismissed because it fails to allege facts plausibly suggesting that WHRI or persons working at the Facility knew or should have known about Plaintiff's alleged trafficking.

In some paragraphs, the Complaint alleges in conclusory fashion that the Defendants "knew, or should have known, that J.L. was being trafficked . . . ."  *See, e.g.*, Dkt. 1, at ¶ 81. Boilerplate allegations like these are insufficient to withstand a motion to dismiss.  *See, e.g.*, *Kelsey v. Goldstar Estate Buyers Corp.*, 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014) (dismissing TVPRA claim where the complaint "regurgitate[ed]" the statute's language "woven together with conclusory statements and a generous use of 'and/or'").

Elsewhere, the Complaint appears to imply that WHRI "should have known" about Plaintiff's trafficking because the hospitality industry generally is aware that commercial sex activity sometimes occurs at hotels.  *See, e.g.*, Dkt. 1, at ¶¶ 1, 50-54.  Even if WHRI had been associated with the La Quinta® brand at the time of Plaintiff's alleged trafficking, allegations of general knowledge are insufficient under the TVPRA to show that a defendant knew or should have known about the trafficking of a particular plaintiff at a particular hotel.  *See, e.g.*, *Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4-5 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in

Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory. . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

Furthermore, the few allegations specific to Plaintiff's alleged trafficking at the Facility do not support a plausible inference that WHRI or persons working at the Facility knew or should have known about Plaintiff's trafficking.  In *Lawson v. Rubin*, the plaintiffs alleged that they were lured to the penthouse of a condominium complex so that Howard Rubin could sexually assault them; Blue Icarus, LLC leased that penthouse to Rubin.  2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 17-CV-6404 (BMC), 2018 WL 7958928 (E.D.N.Y. June 11, 2018).  The plaintiffs argued that Blue Icarus should have known that Rubin and others were committing sex trafficking crimes at the condominium complex in part because emergency personnel had been called regarding incidents at the penthouse on two occasions, and—according to the plaintiffs—Blue Icarus should have done more to investigate.  *Id.*  The court dismissed the TVPRA claim against Blue Icarus, reasoning that the allegations did not give rise to a reasonable inference that Blue Icarus was liable under the TVPRA.  *Id.*

Here, there are no allegations that anyone at the Facility witnessed any abusive behavior toward Plaintiff, and there is no allegation that emergency personnel were even called to the Facility.  Allegations that the front desk received noise complaints on one occasion cannot support an inference that persons at the Facility should have known that plaintiff was being trafficked. Speculative allegations, including the allegation that housekeeping staff "would have" seen potential evidence of commercial sex activity when cleaning the trafficker's room on one occasion, cannot support a claim under federal pleading standards.  As in *Lawson*, the allegations in the

Complaint simply cannot support a plausible inference that anyone at the Facility knew or should have known about Plaintiff's trafficking, much less a parent company like WHRI that only became affiliated with the La Quinta® brand after the alleged trafficking.  *See, e.g.*, Minute Entry (Dkt. 241), *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR (N.D. Ga. Feb. 7, 2020) ("The Court rules the timely motions to dismiss filed by [WHRI and others] and argued today will be GRANTED . . . .").[2]

These defects are not cured by conclusory allegations of "willful blindness."  *See, e.g.*, Dkt. 1, at ¶ 53(j).  The Complaint does not allege facts sufficient to support a plausible inference that (i) WHRI subjectively believed there was a high probability that Plaintiff was being trafficked, or that (ii) WHRI took deliberate steps to avoid confirming that Plaintiff was being trafficked, let alone specify what those steps may have been.  *See, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two basic requirements:  (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact").  The Complaint even states

---

[2] Two decisions from the Southern District of Ohio, which were decided *before* hotel franchisors were dismissed from four cases in the Northern District of Georgia, do not change this result.  *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) (Marbley, J.); *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) (Marbley, J.).  In *M.A.* and *H.H.*, the court denied motions to dismiss claims brought under Section 1595(a) of the TVPRA.  In doing so, the court improperly applied the pre-*Twombly* dismissal standard, stating that "[t]he Court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *M.A.*, 2019 WL 4929297, at *1 (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  The court incorrectly found that the rental of a hotel room, even without sharing a common purpose with the alleged traffickers, was sufficient to satisfy both the "participation in a venture" and "knowingly benefits" elements.  The court ultimately denied the motions to dismiss even though there were no well-pled allegations supporting a TVPRA claim against the franchisor defendants.  Moreover, the allegations in the Complaint do not rise to the same level as those in *H.H.* and *M.A.*, making those decisions further distinguishable.

that WHRI took steps to combat trafficking.  *See* Dkt. 1, at ¶ 37.  Plaintiff's threadbare willful

blindness allegations cannot support a claim that WHRI "should have known" of the trafficking.

Lacking any well-pled allegation that WHRI knew or should have known that Plaintiff was being

trafficked, the Complaint fails to state a claim under the TVPRA.  The Complaint should be

dismissed as to WHRI.

V.   CONCLUSION & REQUEST FOR RELIEF

For all of the foregoing reasons, the Complaint should be dismissed with prejudice as to

WHRI.

Dated:  February 19, 2020.                 Respectfully submitted,


                                           *s/ Kathryn A. Reilly*
                                           Kathryn A. Reilly
                                           Chuan "CiCi" Cheng
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, CO 80202
                                           Telephone:  303.244.1800
                                           Facsimile:  303.244.1879
                                           Email:  reilly@wtotrial.com
                                                   cheng@wtotrial.com

                                           David S. Sager
                                           *Application for Admission to*
                                           *District of Colorado forthcoming*
                                           DLA PIPER LLP (US)
                                           51 John F. Kennedy Parkway, Suite 120
                                           Short Hills, New Jersey 07078-2704
                                           Telephone:  973.520.2550
                                           Facsimile:  973.520.2551
                                           Email:  david.sager@us.dlapiper.com

13

Christopher B. Donovan
*Admitted to District of Colorado*
DLA PIPER LLP (US)
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
Telephone:  713.425.8400
Facsimile:  713.425.8401
Email:  christopher.b.donovan@dlapiper.com

Attorneys for Defendant Wyndham Hotels &
Resorts, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2020, I electronically filed the foregoing

DEFENDANT WYNDHAM HOTELS & RESORTS INC.'S MOTION TO DISMISS with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys

of record.

*/s/ Claudia Jones for Kathryn A. Reilly*