IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03713-STV

J.L., an individual,

        Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC.;
HYATT CORPORATION;
WYNDHAM HOTELS AND RESORTS, INC.; AND
MARRIOTT INTERNATIONAL, INC.

        Defendants.

---

## DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
## MOTION TO DISMISS

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

CERTIFICATE OF CONFERRAL ............................................................................................ 1

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

    I.      PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL
           SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO
           ALLEGE A PLAUSIBLE TVPRA CLAIM ........................................................ 6

           A.     THE COMPLAINT FAILS TO ALLEGE THAT MARRIOTT
                    INTERNATIONAL "KNEW OR SHOULD HAVE KNOWN"
                    ABOUT THE SEX TRAFFICKING OF J.L. ............................................ 7

           B.     THE COMPLAINT FAILS TO ALLEGE THAT MARRIOTT
                    INTERNATIONAL "KNOWINGLY" BENEFITTED FROM A
                    SEX TRAFFICKING VENTURE ............................................................ 8

           C.     THE COMPLAINT FAILS TO ALLEGE MARRIOTT
                    INTERNATIONAL'S "PARTICIPATION" IN A "SEX
                    TRAFFICKING VENTURE" ................................................................. 9

           D.     THE COMPLAINT RELIES ON IMPERMISSIBLE "COOKIE-
                    CUTTER" ALLEGATIONS, TRANSPLANTED FROM THE
                    PLEADINGS OF OTHER, UNRELATED LITIGANTS ...................... 13

    II.     PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL
           SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE
           THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE
           FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE
           SHERATON DENVER TECH CENTER ........................................................ 15

    III.    THE COMPLAINT RELIES ON IMPERMISSIBLE GROUP
           PLEADING ...................................................................................................... 17

CONCLUSION ......................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Marriott International, Inc.*, No. 1:19-cv-5770 (E.D. Pa. 2019) .......................................14

*Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176 (C.D. Cal. 2015)........................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................5, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................5, 14

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ............................................................9, 10, 11

*Canosa v. Ziff*, 18 CIV. 4115 (PAE), No. 18 Civ. 4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..................................................................................................................................9

*Cha v. Hooters of America*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) ....................................................................................................................16

*C.K. v. Wyndham Hotels and Resorts, Inc., et. al.*, No. 3:19-cv-01412-J-20PDB (M.D. Fla. 2019) ........................................................................................................................14

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211 (S.D.N.Y. 2011) ....................................................................................................14

*Corrales v. Days Inn Worldwide, Inc.*, No. 04-CV-149, 2005 WL 4655135 (D. Colo. Dec. 5, 2005) ..............................................................................................................................15

*Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018).............................................................................7

*Geiss v. Weinstein Co. Holdings LLC*, No. 17 CIV. 9554 (AKH), 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019)........................................................................................................13

*Jacobs v. Credit Suisse First Bos.*, No. 11-CV-00042-CMA-KLM, 2011 WL 4537007 (D. Colo. Sept. 30, 2011) ..............................................................................................6, 17

*K.B. v. International Hotels Corporation, et al.*, No. 1:19-cv-1213 (D. N.H. 2019) ...................14

*Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990) .......................................................17

*Misko v. Speedway, LLC*, 16-CV-13360, 2018 WL 2431638 (E.D. Mich. May 29, 2018)............7

*Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ...............................................................................................................................14

*N.T. v. Taco Bell Corp.,* No. 19-1028, 2019 WL 4168807 (D. Kan. Sept. 3, 2019) .....................16

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ...........................................................12

*Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427 (1973)...........................................11

*Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639 (N.D. Ga. Sept. 9, 2014) ........................................................................................................................................12

*Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .........................................................................................................7

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).....................................................................9, 10

*Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008)...........................................................6, 17

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) .................................................12

*Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009).........................................................6

*Shabazz v. Bank of America*, No. 1:10-cv-0813, 2010 WL 11647333 (N.D. Ga., Oct. 26, 2010) .......................................................................................................................................14

*Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005)...................................................................11

*Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) .........16

*United States v. Turkette*, 452 U.S. 576 (1981) ...........................................................................12

*Villalpando v. Denver Health and Hosp. Authority*, 181 P.3d 357 (Colo. App. 2007)................15

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ..........................17

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................................17

Fed. R. Civ. P. 12(b)(6)................................................................................................................5

**Statutes**

18 U.S.C §1591..............................................................................................................................6

18 U.S.C. § 1591(e)(6)..................................................................................................................11

18 U.S.C §1595(a) .............................................................................................. 6, 7, 8, 9

18 U.S.C. § 1961(4) ....................................................................................................................................11

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1 and STV Practice Standard V., undersigned counsel certifies that the parties conferred as to the substance of this motion. Plaintiff opposes the relief sought in this motion.

**INTRODUCTION**

The single claim against Marriott International under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") should be dismissed for at least three principal reasons.

*First*, the Complaint fails to plead facts sufficient to state a claim that Marriott International knowingly benefitted from and participated in the trafficking of J.L.  The thrust of the Complaint is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry.  But other than alleging Marriott International owns the Sheraton brand, which was licensed to the independent owner and operator of the Sheraton Denver Tech Center hotel, the Complaint lacks any factual allegations that Marriott International knew, should have known, or even plausibly could have known that J.L. was being coerced into performing commercial sex acts against her will.  The Complaint lists three news reports about sex trafficking and five news reports about prostitution all involving different hotels in different states in an attempt to allege Marriott International should have been generally aware sex trafficking can occur at Sheraton hotels, but those reports are irrelevant to the allegations J.L. asserts here.  And as to Marriott International's knowledge of J.L. specifically, the Complaint says nothing.  Most importantly, it does not even allege that J.L. had any contact or interactions with employees of the Sheraton Denver Tech Center hotel, who were not Marriott International employees—much less any contact with actual Marriott International employees—that could have put Marriott International on notice of the alleged

1

crimes committed against J.L.  Indeed, the only mention of any alleged trafficking of J.L. at a Sheraton hotel is a reference to a time when she "arrived at the Sheraton with three much older men" but the balance of allegations in that same paragraph reference events occurring at a Best Western hotel.  Compl. ¶ 74.[1]  All other allegations of trafficking in the Complaint reference other hotels that are not franchised under the Marriott brand.

The Complaint also lacks factual allegations that Marriott International participated in the trafficking of J.L.  To the contrary, the factual allegations in the Complaint contradict that conclusion. The Complaint alleges that J.L.'s trafficker took drastic measures to conceal his crimes, including subjecting J.L. to physical abuse, verbal abuse, psychological torment, kidnapping and false imprisonment.  In other words, by the Complaint's own narrative, *J.L.'s trafficker successfully prevented Marriott International (or anyone else) from learning of their wrongdoing.*

*Second*, the Complaint fails to plead sufficient facts to hold Marriott International vicariously liable for the actions (or inactions) of the staff at the Sheraton Denver Tech Center hotel.  J.L.'s trafficking allegedly occurred at the Sheraton Denver Tech Center, a franchise hotel that was independently owned and managed by non-parties to this action.  Marriott International did not own or operate the hotel or employ any individuals at the hotel.  The Complaint alleges that Marriott International is vicariously liable for the acts or omissions of the franchisee or management company at the hotel because it had the right to enforce uniform standards under a

---

[1] To the extent the references to Best Western in Paragraph 74 may be a typographical error, counsel for Marriott contacted Plaintiff's counsel prior to filing this motion as required by Local Rule 7-1, identified the potential misstatement and inquired whether Plaintiff intended to amend the complaint to revise the potential error.  Plaintiff's counsel has not responded to that effort and has not amended the complaint to correct any potential error.

franchise agreement, and to terminate that agreement if the hotel breached it.  As a matter of Colorado law, however, those allegations cannot establish an agency relationship sufficient to subject Marriott International to vicarious liability.

*Third*, the Complaint is replete with impermissible group pleading allegations that do not satisfy the notice pleading requirements of the Federal Rules of Civil Procedure.  The Complaint seeks to challenge the hotel industry generally for failing to stop sex trafficking but does not allege facts that are specific to actions by Marriott International.  To be clear, Marriott International has been an industry leader in addressing human trafficking, including developing and implementing training at hotels around the world, and condemning all forms of human trafficking and sexual exploitation.  Compl. ¶ 39, n. 23.  But this case is not about the hospitality industry and human trafficking in general.  It is about J.L. and the specific claim she is asserting in this lawsuit.  While the allegations of the wrongdoing committed against J.L. by an *unnamed trafficker* are horrific, these allegations do not state a cause of action under the TVPRA against *Marriott International*.

## BACKGROUND

This lawsuit is part of a nationwide wave of dozens of cases filed in late 2019 and early 2020 using a boiler-plate form complaint seeking to hold hospitality industry participants liable under the TVPRA for sex trafficking.  While the plaintiffs and defendants vary in each case, the lengthy complaints are virtually identical in their conclusory allegations: they allege the hospitality industry has turned a blind eye to sex trafficking; they assert that various defendant franchisors "control" the hospitality industry and therefore "participate" in sex trafficking at hotels; they list reports of sex trafficking at different hotels throughout the country; and they conclude with brief

allegations about the criminal trafficker's acts against the plaintiff in each case.[2]   Although the allegations regarding each plaintiff's victimization by her *traffickers* are horrifying, the allegations against *Marriott International* are sparse, vague, and conclusory.

The Complaint here follows this form.  It focuses on the phenomenon of sex trafficking generally, but includes just a few, conclusory allegations against Marriott International in relation to J.L.  For example, the Complaint cites statistics, news articles, and policy reports on human sex trafficking (Compl. ¶¶20-42) and generalities concerning the franchisors' alleged "control" over the hospitality industry (Compl. ¶¶43-49), and their alleged awareness of prostitution crimes committed in other states (Compl. ¶¶51-54).  None of this relates to the alleged wrongdoing carried out against J.L. by her trafficker or her civil claim against the franchisors.

When it comes to telling J.L.'s story, the Complaint tells a disturbing tale of her kidnapping and victimization by an unnamed trafficker.  In 2016, at the age of seventeen, J.L. ran away from her father out of fear that she was a burden to him because of her heroin addiction.  Compl. ¶ 56. After running away from home, a friend introduced J.L. to a man in Denver who promised that he could help her make money to support herself.  Compl. ¶ 57.  When J.L. met this man at a Best Western hotel, he bludgeoned her with a gun, bound and raped her, and posted naked photos of her online, advertising her for commercial sex.  Compl. ¶ 57, 58.  J.L. woke restrained to the bed naked, with three armed men standing guard.  Compl. ¶ 58.  From that point on, J.L. was trafficked throughout the Denver Tech Center under the watch of armed guards, and was forced by her trafficker to sexually service numerous buyers at various hotels in the area.  Compl. ¶¶ 59.  The

---

[2]  The attempt to hold the hospitality industry parties liable generally through consolidated proceedings has been denied.  *In re Hotel Industry Sex Trafficking Litigation*, MDL No. 2928, ECF No. 235 (J.P.M.L. Feb. 5, 2010).

trafficker concealed his crimes through physical and psychological violence; J.L. had virtually no contact with hotel staff.  Compl. ¶¶ 6, 55, 80, 92.  Indeed, J.L.'s trafficker made it clear to her that he was always carrying a firearm and threatened to harm her seven-year-old sister and other family members.  Compl. ¶ 60.

The Complaint then asserts the bare legal conclusion that Marriott International somehow knew or should have known about these crimes, but makes no factual allegations to support that legal conclusion.  Compl. ¶¶ 80-82.  And without suggesting how Marriott International plausibly could have known about J.L.'s plight, the Complaint further asserts the conclusion that "the Defendant Hotels" failed to take "reasonable measures" that somehow would have revealed the sex trafficking and prevented his crimes against J.L.  Compl. ¶ 86.  Nowhere does the Complaint allege facts suggesting that Marriott International was aware of the wrongdoing or participated in the sex trafficking of J.L.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), courts require a plaintiff to allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.*  Although factual allegations are accepted as true, "labels and conclusions" are given no deference.  *Twombly*, 550 U.S. at 545 (internal citations omitted).  Allegations made against groups of defendants, moreover, cannot

withstand challenges under Rule 12(b)(6) because such allegations deprive each individual defendant of fair notice of what it is alleged to have done.  *See*, *e.g.*, *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain" what particular acts they are accused of doing.); *Jacobs v. Credit Suisse First Bos.,* No. 11-CV-00042-CMA-KLM, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011) (criticizing shotgun pleading and noting "[t]ypically this defect occurs when the plaintiff sues a large number of defendants for a series of discrete events in which not every defendant participated in completely; nevertheless, the pleader lazily asserts claims against 'the defendants' generally, without attempting to sort out the individual actors alleged to be liable for each individual action or discrete claim."); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In response to a motion to dismiss, we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.") (emphasis in original)).

## **ARGUMENT**

### I.   **PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM**

In enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion. 18 U.S.C. §1591.  Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate

district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. §1595(a) (emphasis added).  The Complaint does not allege that Marriott International was a "perpetrator" of the trafficking of J.L.  Rather, it alleges in a conclusory manner that Marriott International knowingly benefitted from and participated in a venture by an unnamed sex trafficker.  The Complaint is fatally defective, however, because it does not (and cannot in good faith) allege any facts suggesting that Marriott International plausibly knew or should have known about J.L.'s tormentor or knowingly benefitted from his wrongdoing, let alone "participated" in that wrongdoing.

## A.  THE COMPLAINT FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNEW OR SHOULD HAVE KNOWN" ABOUT THE SEX TRAFFICKING OF J.L.

The thrust of the Complaint is that Marriott International "knew or should have known" (18 U.S.C. §1595(a)) that J.L. was being trafficked sometime after 2016 because "the hospitality industry" is complicit in sex trafficking.  Compl. ¶¶ 20-42.  These allegations are copied from other complaints filed throughout the country against many different franchisors, and have very little to do with Marriott International or J.L.  Thus, as a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of J.L.'s sex trafficking.  *See, e.g.*, *Misko v. Speedway, LLC*, 16-CV-13360, 2018 WL 2431638, at *10 (E.D. Mich. May 29, 2018) ("[G]eneral knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time.") (internal quotations omitted); *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA claim where complaint did "not include a plausible allegation that Defendants saw the ad

7

concerning Plaintiff Doe and knew it related to illegal sex trafficking"); *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5-6 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports about human trafficking in Thailand and reports and letters by advocacy groups … [but] Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

The Complaint also attempts to establish notice of J.L.'s trafficking based on news stories of sex trafficking and prostitution at other Sheraton hotels in different locations.  Compl. ¶ 54.j(i)-(viii).  Here again, however, these reports could not have put Marriott International on notice of *J.L.'s* trafficking.  At least five of the eight reports deal with criminal prostitution, not criminal sex trafficking, and none concerned J.L. or the Sheraton Denver Tech Center hotel.

The brief allegations about J.L. likewise lack any link to Marriott International.  To the extent the allegations say anything about the hotels, they are generic or refer to a different hotel (Compl. ¶¶ 61-79).  With respect to the Sheraton Denver Tech Center hotel, the Complaint does not even allege that Plaintiff engaged in commercial sex activity at the hotel.  The Complaint also alleges no contact with any hotel staff, none of whom were Marriott International employees in any event.  Simply put, the Complaint alleges no facts to suggest that Marriott International knew or should have known that J.L. was being trafficked at a franchise hotel against her will for commercial sex acts.

## B.   THE COMPLAINT FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNOWINGLY" BENEFITTED FROM A SEX TRAFFICKING VENTURE

Additionally, for the same reasons, Plaintiff's claim must be dismissed because the

Complaint does not allege that Marriott International "knowingly" benefitted from a sex trafficking venture.  18 U.S.C. §1595(a).  Apart from reciting conclusory labels, the Complaint alleges only that Marriott International "directly benefitted from the trafficking of J.L. on each occasion they received payment for rooms that she was being kept in [its] hotels."  Compl. ¶ 96.  But the Complaint pleads no facts plausibly suggesting that Marriott International, the franchisor, had any reason to suspect that the rooms were used to commit sex trafficking crimes as alleged by the Complaint.  *See supra* Part I.A.  As a franchisor, Marriott International receives a royalty from the overall revenues from the business of the franchised hotel.  The collection of rent by an unrelated hotel manager from guests in the ordinary course of business cannot support a reasonable inference that a franchisor such as Marriott International "knowingly" benefited from crimes committed in those rooms.  *See*, *e.g.*, *Canosa v. Ziff*, 18 Civ. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (internal citations omitted) (noting that a defendant cannot be held liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

### C.   THE COMPLAINT FAILS TO ALLEGE MARRIOTT INTERNATIONAL'S "PARTICIPATION" IN A SEX "TRAFFICKING VENTURE"

The Complaint falls woefully short of alleging any facts to support the conclusion that Marriott International "participated" in a trafficking "venture."  18 U.S.C. §1595(a).

Under the TVPRA, a "venture" only exists when there is a common "purpose" among the participants.  *Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019).  *Bistline*, and its discussion of *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017), are instructive.  In *Ricchio*, motel operators (the Patels) and an alleged trafficker (McLean) "had previously collaborated in unspecified 'commercial dealings.'"  *Bistline*, 918 F.3d at 874 (citing *Ricchio*, 853 F.3d at 555).  While the victim (Ms. Ricchio) was held captive:

> *McLean and Mr. Patel enthusiastically expressed [intent to reinstate these commercial dealings] by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels.* Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

*Id.* (quoting *Ricchio*, 853 F.3d at 555) (emphasis added, internal alterations by *Bistline* Court). In other words, the complaint adequately alleged that the motel operators knowingly benefited from participating in a sex-trafficking venture because they "knowingly" rented the room to the trafficker for the purpose of trafficking the plaintiff. *Ricchio*, 853 F.3d at 555-56. Writing for the panel, retired Supreme Court Justice Souter (sitting by designation) emphasized that "not only were McLean's actions different from the expectable behavior of a man who simply wished to overcome a woman's reluctance to engage in sexual activity; *they were indications of what he and Mr. Patel had in mind when McLean spoke of 'this thing.'*" *Id.* at 557 (emphasis added).

Likewise, in finding a "venture" adequately alleged under the TVPRA, the Tenth Circuit in *Bistline* noted that lawyers for the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") "had ample notice of the illegal activities which were taking place within the FLDS community while they were actively seeking to enforce [Warren] Jeffs' control and simultaneously protecting him from any liability." *Bistline*, 918 F.3d at 874. The Court noted that "plaintiffs allege that defendants and Mr. Jeffs 'actively discussed [Jeffs'] illegal goals' … and that Mr. Jeffs retained defendants' legal counsel *for the purpose of developing a scheme to 'cloak' forced labor and ritual rape of young girls* 'with the superficial trappings of legal acceptance'… " *Id.* at 875 (emphasis added). Indeed, despite having received "*graphic evidence of the ceremonial rape of*

*little girls*," the lawyer-defendants in *Bistline* set up a scheme "designed *expressly for the purpose of facilitating* [Jeffs'] crimes and also ensuring that [the lawyers] would personally reap ample benefits therefrom…" *Id.* at 875 (emphases added).

In other words, alleging a TVPRA claim requires plausible factual allegations of participation in a "common purpose" *with the perpetrators*.  In stark contrast to the diabolical "purpose" shared by the Jeffs and the lawyer-defendants in *Bistline*—pled in gruesome detail—this Complaint here does not (and cannot in good faith) plead *any* such "common purpose" between Marriott International and J.L.'s unnamed trafficker.  Accordingly, it should be dismissed with prejudice.

This conclusion also comports with standard canons of statutory construction.  As recognized by the Tenth Circuit, the TVPRA defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)).  That definition closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act; both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals *associated in fact*, whether or not a legal entity" (emphasis added)) *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals *associated in fact* although not a legal entity") (emphases added)).  Where (as here) Congress uses similar language in two statutes, it is "presume[d] that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *see also Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu.").

In the RICO context, persons must be "associated together *for a common purpose*" in order to be "associated in fact." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added); *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017); *cf. Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) ("The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act [].""). The same principle applies here: Marriott International and J.L.'s trafficker must be "associated together for a common purpose" in order to establish liability. Again, the Complaint does not (and cannot in good faith) allege that Marriott International shared any such purpose with J.L.'s trafficker.[3] *See also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524

---

[3] It is well-settled and beyond cavil that business transactions in the ordinary course (*e.g.*, sales and rentals), cannot give rise to an inference of participation in a "common purpose" within the meaning of these statutes. Indeed, if the law were otherwise, then every business which might have engaged in a routine commercial interaction with J.L.'s trafficker (*e.g.*, an unwitting taxi driver taking J.L. to her next destination) would be a culpable participant—a result both absurd and far removed the facts alleged in *Bistline* and *Ricchio*. *See, e.g.*, *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016) (where cooperation was no more than "that inherent in every commercial transaction, the Complaint provides no basis for inferring that the Defendants were conducting the enterprise's affairs") (internal quotations and alterations omitted)); *Cirino v. Bank of Am., N.A.*, CV 13-8829 PSG MRWX, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (allegations that vendors were "instrumentalities" to carry out RICO enterprise insufficient to show that they shared a common purpose with the enterprise); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2:11-CV-07166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) ("At the risk of being glib, this allegation amounts to one that 'Countrywide offered to buy something, and the lenders obliged.' Western and Southern [have] identified exactly the type of arms-length business transaction … that does not constitute a RICO enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose.").

(S.D.N.Y. 2018) (citing *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016) ("Because guilt, or in this case liability, cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture.  Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture.  In other words, some participation in the sex trafficking act itself must be shown."); *Geiss v. Weinstein Co. Holdings LLC*, No. 17 CIV. 9554 (AKH), 2019 WL 1746009, at *7 (S.D.N.Y. Apr. 18, 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities …") (internal citation omitted, emphasis in original)).

The Complaint altogether fails to allege that Marriott International "participated" in a "venture."  Accepting, for purposes of this motion, the premise that sex trafficking occur at hotels, it does not follow that any entity affiliated with a hotel, let alone the franchisor, must be liable for resulting harm.  Simply put, there are no allegations that Marriott International shared (let alone participated in) a "common purpose" with J.L.'s trafficker.  Indeed, if Marriott International did not even know and could not plausibly have known about the sex trafficking venture (*see supra* Section I.A.), *a fortiori* it did not and could not have "participated" in that venture.  The Complaint asserts merely the legal conclusion that "Defendants … actively participated in this illegal endeavor [of trafficking J.L.]."  Compl. ¶¶ 83, 85.  Yet it fails to assert any factual allegations to support that conclusion.

### D.    THE COMPLAINT RELIES ON IMPERMISSIBLE "COOKIE-CUTTER" ALLEGATIONS, TRANSPLANTED FROM THE PLEADINGS OF OTHER, UNRELATED LITIGANTS

The implausibility of the Complaint is further demonstrated by the fact that the Plaintiff has merely copied and pasted "cookie-cutter" or boiler-plate allegations from the pleadings of

13

other, unrelated TVPRA litigants, filed in different states around the same date, as part of a failed effort to consolidate claims against the hotel industry generally.  *See*, *e.g.*, *C.K. v. Wyndham Hotels and Resorts, Inc., et. al.*, No. 3:19-cv-01412-J-20PDB (M.D. Fla. 2019); *A.B. v. Marriott International, Inc.*, No. 1:19-cv-5770 (E.D. Pa. 2019); *K.B. v. International Hotels Corporation, et al.*, No. 1:19-cv-1213 (D. N.H. 2019).  Even though each case involved different plaintiffs, different criminals, and different hotel owners and operators, plaintiffs' counsel in each case pled the same boiler-plate and conclusory allegations against Marriott International.

Following *Twombly* and *Iqbal*, *supra*, federal courts throughout the country have condemned the practice of using such "form complaints" as a badge of inadequate pleading.  In dismissing one such complaint, the court explained:

> Plaintiff's complaint is a form complaint that "makes generalized allegations regarding practices of the mortgage lending industry" and is "devoid of particularized factual allegations against Defendant." … *[O]ther courts both within and outside of this district have had almost identical complaints on their dockets. … Plaintiff has apparently simply copied and pasted the form complaint to create her own complaint*, and her complaint contains no allegations specific to her mortgage transaction.

*Shabazz v. Bank of America*, No. 1:10-cv-0813, 2010 WL 11647333, at *2 and n.1 (N.D. Ga., Oct. 26, 2010) (internal citations omitted, emphasis added); *Cf. also Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) (internal citations omitted) (condemning a litigant's attempt to "adopt allegations from another lawsuit as its own" and "[s]tripping away [the litigant's] transplanted allegations"); *Muhammad v. Bethel-Muhammad*, No. 11-0690, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) ("The plaintiff's sweeping reference to his 100–page complaint represents precisely the boiler plate safety valve … that other courts—and this one—condemn.") (internal quotations and citations omitted).

This case represents a paradigmatic example of improper "form" pleading.  As in each

other TVPRA case above, the Complaint here alleges the vague legal conclusions that Marriott International knew or should have known about the sex trafficking committed against different victims and failed to take reasonable measures to discover and prevent those crimes.  While the use of form complaints (as here) is always a clear sign of inadequate pleading, it is particularly inappropriate in the context of TVPRA claims, which cabins civil liability upon specific proof of criminal acts by those who actively and knowingly participate in sex trafficking ventures.  *See supra* Part I.A-C.

## II.   PLAINTIFF'S CLAIM AGAINST MARRIOTT INTERNATIONAL SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE SHERATON DENVER TECH CENTER.

In the Complaint, the Sheraton Denver Tech Center is the only hotel at which J.L. was allegedly trafficked and with which Marriott International has a franchisor-franchisee relationship. Compl. ¶¶ 12.g, 54.a.  The Complaint assumes that this relationship renders Marriott International responsible for the acts or omissions of the Sheraton staff with respect to J.L.'s trafficking.  But that assumption is incorrect as a matter of Colorado law.

Under Colorado law, "[a]n agency relationship results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *Villalpando v. Denver Health and Hosp. Authority*, 181 P.3d 357, 362 (Colo. App. 2007).  *Corrales v. Days Inn Worldwide, Inc.*, No. 04-CV-149, 2005 WL 4655135, at *1 (D. Colo. Dec. 5, 2005) is instructive.  There, a hotel guest of a franchisee sustained burns while showering and sued the franchisor under premises liability and negligence theories.  *Id.* at *1.  The plaintiff argued that the licensing agreement, which set forth comprehensive standards of performance for the franchisee, established an agency relationship.  *Id.* at *2.  This Court disagreed, holding that "[s]tandards,

training, inspection, and the right to terminate the license agreement do not alone establish sufficient control to charge [the franchisor] with liability for injuries sustained by a guest in connection with the operation of the [franchisee's] facility." *Id.*

Likewise, federal courts throughout the country, applying substantially similar principles under state law, have found complaints which (as here) allege a mere franchisor-franchisee relationship insufficient and dismissed them. *See*, *e.g.*, *Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015) (dismissing vicarious liability claim under *Little*); *see also N.T. v. Taco Bell Corp.,* No. 19-1028, 2019 WL 4168807 (D. Kan. Sept. 3, 2019) (dismissing vicarious liability claim against franchisor under Kansas law); *Cha v. Hooters of America*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013) (dismissal under New York law); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) (dismissal under Maryland law).

These principles compel the same result here.  The Complaint alleges that Marriott International exercises "an ongoing and systemic right of control over Sheraton Hotels."  Compl. ¶ 54.g.  But it does not allege facts that Marriott International had any right to control the day-to-day operations or security at the Sheraton Denver Tech Center hotel.  To the contrary, the Complaint admits that, at most, "[p]er the contract or franchise agreement," Marriott International "may enforce [its] standards through periodic inspections and *even termination of the agreement if the local hotel is found to be inadequate*."  Compl. ¶ 47 (emphasis added).  This is insufficient as a matter of law to establish vicarious liability.

The Complaint does not allege facts to support an apparent agency theory of vicarious liability either.  Apparent authority is created by words or conduct of the principal which,

reasonably interpreted, causes a plaintiff to believe that the principal consents to the agent acting on his behalf.  *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990).  Critically, "*it is the …principal, whose words or conduct must support the existence of plaintiff's claimed reliance on the [putative agent's] apparent authority.*"  *Id.* at 209 (emphasis added).  Here, again, the Complaint merely advances the legal conclusion that "[a]pparent agency also exists between Defendant Marriott and Sheraton hotels."  Compl. ¶ 54.h.  But it does not (and cannot in good faith) allege facts suggesting that J.L. relied on Sheraton's authority or that that such belief was generated by Marriott International's words or conduct.  And the factual crux of the Complaint— that J.L. was trafficked in hotels *against her will*—is logically incompatible with the notion that J.L. somehow "relied" on a representation by Marriott.

## III.    THE COMPLAINT RELIES ON IMPERMISSIBLE GROUP PLEADING

Lastly, the Complaint should be dismissed because it fails to attribute specific factual allegations to specific defendants.  *See Robbins,* 519 F.3d at 1249–50 (dismissing complaint that failed to distinguish between numerous "defendants" against whom claims were asserted); *Jacobs v. Credit Suisse First Bos.,* 2011 WL 4537007, at *7.  The Complaint includes many generalities, but very few specific and pertinent allegations against Marriott International.  Throughout the Complaint, there are numerous general group allegations as to the "hotels" or "Defendant Hotels" collectively, *e.g.*, "Defendants had actual and/or constructive notice … Defendants failed to take any action … Defendants leased rooms," and so on.  *See*, *e.g.*, Compl. ¶¶ 78, 80.  Such shotgun pleadings are improper because they deprive Marriott International of notice of what it is alleged to have done.  Fed. R. Civ. P. 8(a)(2) (requiring "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (Complaints

that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'").   The

Complaint here does not include factual allegations sufficient to plausibly suggest that *Marriott*

*International* violated the TVPRA based upon trafficking that allegedly occurred at the Sheraton

Denver Tech Center hotel.

## **CONCLUSION**

For all the foregoing reasons, Marriott International respectfully requests that this Court

dismiss the Plaintiff's claim against Marriott International in its entirety and with prejudice, and

to grant such other and further relief as the Court deems just and proper.

Dated:  February 20, 2020.                    Respectfully submitted,


                                              *s/ Kathryn A. Reilly*
                                              Kathryn A. Reilly
                                              Chuan "CiCi" Cheng
                                              Wheeler Trigg O'Donnell LLP
                                              370 Seventeenth Street, Suite 4500
                                              Denver, CO 80202
                                              Telephone:   303.244.1800
                                              Facsimile:  303.244.1879
                                              Email:   reilly@wtotrial.com
                                                        cheng@wtotrial.com

                                              Attorneys for Defendant Marriott
                                              International, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2020, I electronically filed the foregoing **DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Claudia Jones for Kathryn A. Reilly*