IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03713-PAB-STV

J.L., an individual

       Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC.;
HYATT CORPORATION;
WYNDHAM HOTELS AND RESORTS, INC.; AND
MARRIOTT INTERNATIONAL, INC.

       Defendants.

**DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Wyndham Hotels & Resorts, Inc. ("WHRI"), by and through its undersigned counsel, moves to dismiss Plaintiff's First Amended Complaint, and in support thereof states as follows:

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.Colo.LCivR 7.1 and PAB Practice Standard III.F.2, undersigned counsel certifies that the parties conferred as to the substance of this motion. Plaintiff opposes the relief sought in this motion.

**I.   PRELIMINARY STATEMENT**

WHRI seeks to dismiss Plaintiff's First Amended Complaint (the "Complaint") (Dkt. 65), which asserts a civil claim under the Trafficking Victims Protection Reauthorization Act

("TVPRA") based on allegations that WHRI knowingly benefited from its participation in a venture with unidentified criminal traffickers who, in turn, allegedly trafficked Plaintiff at a La Quinta®-branded hotel in Greenwood, Village, Colorado (the "Facility") during a two-week period in 2016.[1]  The crux of Plaintiff's Complaint is that the TVPRA requires the hotel industry, generally, to prevent trafficking, and that hotels are liable when they are unsuccessful in doing so.  Plaintiff is wrong.  Even setting aside the fact that WHRI had no affiliation with the La Quinta® hotel brand or the Facility when Plaintiff was allegedly trafficked, the Complaint fails to state a claim against WHRI.  There is no allegation that WHRI knew of, shared a common purpose with, or otherwise participated in a TVPRA "venture" with the traffickers.  The Complaint should be dismissed as to WHRI.

## II.   STATEMENT OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that she was victimized by criminal traffickers at multiple Denver-area hotels in 2016, including a La Quinta®-branded hotel in Greenwood Village, Colorado (the "Facility").  *See* Dkt. 65, at ¶ 117.  Seeking to prevent "exposure" of their criminal activities, Plaintiff alleges that she was "shuttled" between hotels to avoid detection.  *See* Dkt. 65, at ¶¶ 7, 110, 124.  During the two-week period during which Plaintiff alleges she was at the Facility, she further alleges that the traffickers refused "maid service" except for one occasion when Plaintiff was not in the room.  *See* Dkt. 65, at ¶ 119.  The Complaint speculates that the Facility's housekeepers "would have" observed used condoms in the room.  *See* Dkt. 65, at ¶ 119.  The

---

[1] Plaintiff originally filed this lawsuit in December 2019, and WHRI and other defendants moved to dismiss the initial complaint in February 2020.  *See, e.g.*, Dkt. 22.  Plaintiff missed the deadline to oppose Defendants' motions, and instead filed an amended complaint without leave to do so.  *See* Dkt. 46.  The Court struck Plaintiff's amended complaint (Dkt. 47), and, six weeks later, Plaintiff moved for leave to amend.  *See* Dkts, 55, 64.

Complaint alleges further that there was a noise complaint, to which the hotel's front desk responded and asked if "everyone was okay" without specifying who spoke with the front desk and how that individual responded  *See* Dkt. 65, at ¶ 121.  Presumably, Plaintiff relies on these vague allegations to suggest that WHRI knew or should have known of her alleged trafficking, but, aware of the grounds for WHRI's motion to dismiss the initial complaint, the Amended Complaint does not specify what occurred, who knew or should have known what happened, or any other facts to suggest that WHRI participated.

In an attempt to fill this obvious void, the Complaint includes allegations about the hospitality industry, generally.  For example, Plaintiff alleges that beginning in 2018 (two years after the alleged trafficking), La Quinta Holdings, Inc. (a holding company) has been a wholly-owned subsidiary of WHRI and. WHRI has received "a percentage of gross room revenue" derived from the Facility's operations.  *See* Dkt. 65, at ¶¶ 20(b), 20(g), 95(c) n.25.  The Complaint is *not* based on specific allegations regarding WHRI or the Facility.  Rather, ignoring the elements of a TVPRA claim, the Complaint alleges that the hospitality industry is generally aware that commercial sex activity occurs at hotels, that the industry should do more to combat the societal problem, and that hotels where trafficking does occur are liable under the TVPRA despite the absence of any particular allegations of their involvement.  *See, e.g.*, Dkt. 65, at ¶ 1.

### III.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In reviewing a motion to dismiss under Rule 12(b)(6), "the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor.  However, the

facts alleged must be enough to state a claim for relief that is plausible, not merely speculative." *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1044 (D. Colo. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Courts, therefore, "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* Allegations made on "information and belief" are given no weight in determining the sufficiency of a pleading. *See, e.g.*, *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013).

## IV.     ARGUMENTS & AUTHORITIES

Plaintiff asserts a single claim under the TVPRA, a criminal statute that can give rise to civil liability for those who commit sex-trafficking crimes and defendants who "knowingly benefit[] . . . from participation in a venture" that commits sex-trafficking crimes while the defendant knew or should have known that the venture was committing such crimes. *See* 18 U.S.C. § 1595(a) (providing that a defendant is civilly liable under the TVPRA if, *inter alia*, the defendant "participat[ed] in a venture . . . [that] has engaged in" sex-trafficking crimes in violation of Section 1591(a)). The Complaint acknowledges that WHRI did not acquire the La Quinta® brand until 2018, two years after the alleged conduct at the Facility. *See* Dkt. 65, at ¶ 20(c). Accordingly, WHRI could not have knowingly benefited from or participated in a

4

TVPRA "venture" with Plaintiff's alleged traffickers. Moreover, the Complaint does not include well-pled allegations sufficient to state a claim under the TVPRA.

### A. The Complaint Does Not Allege That WHRI Participated In A Venture.

One element of a civil TVPRA claim is a defendant's "participation in a venture" that committed sex-trafficking crimes against the plaintiff. 18 U.S.C. § 1595(a). "Venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." *See* 18 U.S.C. § 1591(e)(6). The definition of a TVPRA "venture" closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act; both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity" (emphasis added)), *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals associated in fact although not a legal entity"). Where Congress uses similar language in two statutes, courts may presume that "Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu."); *accord Vetcher v. Barr*, 953 F.3d 361, 369 (5th Cir. 2020).

In the context of RICO, the Supreme Court and the Tenth Circuit Court of Appeals have recognized that, for persons to be "associated in fact," they must operate as a "continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009); *United States v. Kamahele*, 748 F.3d 984, 1003 (10th Cir. 2014); *Apache Tribe of Oklahoma v. Brown*, 966 F. Supp. 2d 1188, 1194 (W.D. Okla. 2013). Accordingly, whether a defendant has

5

"associated in fact" with others for purposes of participating in a TVPRA "venture" depends in part on whether the alleged "venture" participants associated together for a *common purpose* and whether they operated as a *continuing unit*. *See, e.g.*, *Plaintiff A v. Schair*, 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) ("The TVPA's civil remedy operates in the same manner as the federal Racketeer Influenced and Corrupt Organizations Act . . . ."); *Boyle*, 556 U.S. at 944 ("That an 'enterprise' must have a purpose is apparent from the meaning of the term in ordinary usage, *i.e.*, a 'venture,' 'undertaking,' or 'project.'  The concept of 'association' requires both interpersonal relationships and a common interest.").

A commercial transaction (e.g., a person's rental of a hotel room) does not give rise to a reasonable inference that the participants in such a transaction shared any common purpose, operated as a continuing unit, or otherwise "associated in fact."  *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) ("The second amended complaint fails because it has not plausibly alleged that the technology [] and public relations [] vendors named in the complaint shared a common purpose with Spirit."); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (holding that "a commercial relationship" is insufficient to show that parties associated in fact); *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380, 382 (9th Cir. 2018) (affirming dismissal of RICO claims, holding that the "mere existence of service contracts . . . is insufficient to establish a common purpose"); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2:11-CV-07166-MRP, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (dismissing RICO claims where the plaintiffs "identified exactly the type of arms-length business transaction, with each

party pursuing its own economic interests, that does not constitute a RICO enterprise"); *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016).

"Participation" also requires some "overt act" in furtherance of the venture; nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (holding that "participating in a venture" requires "some overt act," and that "mere negative acquiescence" is not enough); *accord Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Indeed, a defendant's lawful association with someone who separately commits sex trafficking crimes is insufficient to show that the defendant itself "participated" in a TVPRA "venture." *See, e.g.*, *Doe 1 v. Red Roof Inns, Inc., et al.*, 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (holding that "mere association alone cannot establish liability" under the TVPRA). Construing the phrase "participation in a venture" otherwise would "create a vehicle to ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

In *Ricchio v. McLean*, the First Circuit Court of Appeals overturned the dismissal of a complaint asserting TVPRA claims against hotel operators, finding the allegations sufficient to support a plausible inference that that they (the Patels) participated in a TVPRA "venture" with the trafficker (McLean). 853 F.3d 553 (1st Cir. 2017) (Souter, J.). The Court of Appeals explained:

> McLean and Mr. Patel enthusiastically expressed intent to reinstate these commercial dealings by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting

7

> the rented quarters to demand further payment, had shown indifference to Ricchio's obvious deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

*Id.* at 555 (internal alterations omitted). The Court of Appeals found that the complaint adequately alleged that the Patels had participated in a TVPRA "venture" with McLean because the Patels knowingly rented rooms to McLean "***for the purpose***" of trafficking the plaintiff. *Id.* at 555-56 (emphasis added). In *Bistline v. Parker*, drawing from the First Circuit's *Ricchio* decision, the Tenth Circuit Court of Appeals overturned the dismissal of a TVPRA claim against lawyers for the Fundamentalist Church of Jesus Christ of Latter-Day Saints (the "FLDS"). 918 F.3d 849 (10th Cir. 2019). The Tenth Circuit Court of Appeals explained that, as alleged in the complaint, the "scheme" created by the lawyers was "designed expressly for the purpose of facilitating" crimes committed by the FLDS and its leadership. The lawyers also structured the "scheme" so that they "would personally reap ample benefits therefrom," and that "despite extensive knowledge of the ways" FLDS leadership "was using [] power to harm plaintiffs and other similarly-situated individuals, defendants continued to use their legal expertise to uphold this scheme." *Id.* at 874-75.

In this case, however, the Complaint does not plausibly allege that WHRI or anyone at the Facility shared any "common purpose" with the alleged traffickers. To the contrary, the allegations in the Complaint suggest that the traffickers undertook efforts to conceal their illicit activities from hotel staff, indicating that they shared no common purpose with hotel staff and thus did not participate in a TVPRA "venture" with them. At most, the Complaint alleges that the Facility was used as an instrumentality of the traffickers' illicit activities, which is

8

insufficient to support a plausible inference that WHRI or persons working at the Facility participated in a TVPRA "venture."  *See Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) (holding that "being an 'instrumentality' does not thereby mean one shares a common purpose" and positing that a defendant's use of the mail in furtherance of the scheme "would not make the Postal Service [] a member of the enterprise"); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The only factual allegation supporting this claim is that BoC provided 'indispensable banking services' to IFS and Siu Lap. The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose.").  The Complaint should be dismissed as to WHRI.

## B. The Complaint Does Not Allege That WHRI "Knowingly" Benefited "From" Participating In A TVPRA "Venture."

Not all benefits are sufficient to satisfy the "knowingly benefit" requirement under the TVPRA.  *See, e.g.*, *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient . . . .").  For liability to arise under Section 1595(a) of the TVPRA, a defendant must "knowingly" benefit "***from***" its participation in a venture that commits trafficking crimes.  18 U.S.C. § 1595(a).  In other words, there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit," with knowledge of that causal relationship.  *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

WHRI could not have benefited—knowingly or otherwise—from Plaintiff's alleged trafficking. The Complaint acknowledges that WHRI was not affiliated with the La Quinta® brand until two years after Plaintiff's alleged trafficking. *See* Dkt. 65, at ¶ 20(c). Moreover, the Facility itself benefited, if at all, from the rental of hotel rooms to the public generally—not from Plaintiff's alleged trafficker. Moreover, where, as here, there are no well-pled factual allegations that the defendant participated in a TVPRA "venture," a defendant could not have "knowingly" benefited "from" participating in such a venture. Because the Complaint lacks well-pled allegations that WHRI benefited "from" participating in a TVPRA "venture," let alone "knowingly" benefited, the Complaint fails to state a TVPRA claim and therefore should be dismissed as to WHRI.

    **C.**    **The Complaint Does Not Allege Facts Plausibly Suggesting That WHRI Or Persons Working At The Facility Knew Or Should Have Known About Plaintiff's Trafficking.**

In addition, to state a claim under the TVPRA, a plaintiff must make well-pled factual allegations plausibly suggesting that the defendant knew or should have known that the venture in which the defendant participated was forcing or coercing the plaintiff to commit commercial sex acts against the plaintiff's will. 18 U.S.C. §§ 1591(a), 1591(e)(2)-(3), 1595(a). Allegations that a defendant knew or should have known about commercial sex activity, absent force or coercion, are insufficient under the TVPRA. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *3 ("[T]he statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally.").

In some paragraphs, the Complaint alleges in conclusory fashion that the WHRI participated in a venture "which it knew or should have known to engage in sex trafficking."

10

Dkt. 65, at ¶ 20(f).  Boilerplate allegations like these are insufficient to withstand a motion to dismiss.  *See, e.g.*, *Kelsey v. Goldstar Estate Buyers Corp.*, 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014) (dismissing TVPRA claim where the complaint "regurgitate[ed]" the statute's language "woven together with conclusory statements and a generous use of 'and/or'").  Elsewhere, the Complaint implies that WHRI "should have known" about Plaintiff's trafficking because the hospitality industry generally is aware that commercial sex activity sometimes occurs at hotels.  *See, e.g.*, Dkt. 65, at ¶¶ 1, 33-82.  But allegations of general knowledge are insufficient under the TVPRA to show that a defendant knew or should have known about trafficking committed by a particular TVPRA "venture."  *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *1 (striking allegations from complaint concerning general knowledge about sex trafficking in the hotel industry, as well as allegations concerning hotels not at issue); *Ratha*, 2017 WL 8293174, at *4-5 ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory. . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

Furthermore, the few allegations specific to Plaintiff's alleged trafficking at the Facility do not support a plausible inference that WHRI or persons working at the Facility knew or should have known about Plaintiff's trafficking.  In *Lawson v. Rubin*, the plaintiffs alleged that they were lured to the penthouse of a condominium complex so that Howard Rubin could sexually assault them; Blue Icarus, LLC leased that penthouse to Rubin.  2018 WL 2012869, at

\*14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 17-CV-6404 (BMC), 2018 WL 7958928 (E.D.N.Y. June 11, 2018). The plaintiffs argued that Blue Icarus should have known that Rubin and others were committing sex trafficking crimes at the condominium complex in part because emergency personnel had been called regarding incidents at the penthouse on two occasions, and—according to the plaintiffs—Blue Icarus should have done more to investigate. *Id.* The court dismissed the TVPRA claim against Blue Icarus, reasoning that the allegations did not give rise to a reasonable inference that Blue Icarus was liable under the TVPRA. *Id.*

In this case, there are no allegations that anyone at the Facility witnessed any abusive behavior toward Plaintiff, and there is no allegation that emergency personnel were even called to the Facility. Allegations that the front desk received noise complaints on one occasion cannot support an inference that persons at the Facility should have known that plaintiff was being trafficked. Speculative allegations, including the allegation that housekeeping staff "would have" seen potential evidence of commercial sex activity when cleaning the trafficker's room on one occasion, cannot support a claim under federal pleading standards. As in *Lawson*, the allegations in the Complaint simply cannot support a plausible inference that anyone at the Facility knew or should have known about Plaintiff's trafficking, much less a parent company like WHRI that only became affiliated with the La Quinta® brand after the alleged trafficking.

These defects cannot be cured with conclusory allegations of "willful blindness." *See, e.g.*, Dkt. 65, at ¶¶ 1, 103(j). The Complaint does not allege facts sufficient to support a plausible inference that (i) WHRI subjectively believed there was a high probability that Plaintiff was being trafficked, or that (ii) WHRI took deliberate steps to avoid confirming that Plaintiff was being trafficked, let alone specify what those steps may have been. *See, e.g.*, *Glob.-Tech*

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact"). The Complaint even states that WHRI took steps to combat trafficking. *See* Dkt. 65, at ¶ 73. Plaintiff's threadbare willful blindness allegations cannot support a claim that WHRI "should have known" of the trafficking.

A series of decisions coming from a judge in the Southern District of Ohio do not change this result. *See, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) (Marbley, J.); *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) (Marbley, J.); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020) (Marbley, J.); *A.C. v. Red Roof Inns, Inc.*, 2:19-CV-4965, 2020 WL 3256261 (S.D. Ohio June 16, 2020) (Marbley, J.). In those cases, the court committed several errors. The court, for instance, improperly applied the pre-*Twombly* dismissal standard, stating that "[t]he Court cannot dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *M.A.*, 2019 WL 4929297, at *1 (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The court also failed to give consideration to the TVPRA's "associated in fact" requirement. Even so, the court still required allegations of a "continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970. No such allegations exist here. The alleged trafficking at the Facility took place over a two-week period; there is no allegation that anyone at

the Facility witnessed any abuse of Plaintiff; and the Complaint concedes that the alleged traffickers took steps to conceal their activities at the Facility.

Lacking any well-pled allegation that WHRI knew or should have known that Plaintiff was being trafficked, the Complaint fails to state a claim under the TVPRA. The Complaint should be dismissed as to WHRI.

## V.     CONCLUSION & REQUEST FOR RELIEF

For all of the foregoing reasons, the Complaint should be dismissed with prejudice as to WHRI. Plaintiff has already been afforded leave to amend once, but Plaintiff's theory of relief is simply incompatible with the TVPRA. No further leave to amend should be granted.

Dated:  June 29, 2020.                                          Respectfully submitted,


*s/ Kathryn Reilly*
Kathryn A. Reilly
Chuan "CiCi" Cheng
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:   reilly@wtotrial.com
             cheng@wtotrial.com

David S. Sager
*Admitted to District of Colorado*
DLA PIPER LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone:  973.520.2550
Facsimile:  973.520.2551
Email:   david.sager@us.dlapiper.com

Christopher B. Donovan
*Admitted to District of Colorado*
DLA PIPER LLP (US)
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
Telephone: 713.425.8400
Facsimile: 713.425.8401
Email: christopher.b.donovan@dlapiper.com

**Attorneys for Defendant Wyndham Hotels & Resorts, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2020, I electronically filed the foregoing DEFENDANT WYNDHAM HOTELS & RESORTS INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Claudia Jones for Kathryn A. Reilly*