IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03713-PAB-STV

J.L., an individual,

        Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC., et al.

        Defendants.

_____

**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
_____

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C. COLO. L. Civ. R. 7.1, undersigned counsel certifies that the parties conferred as to the substance of this motion. Plaintiff opposes the relief sought in this motion.

**INTRODUCTION**

The single claim against Marriott International under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") should be dismissed for at least three reasons. *First*, the Amended Complaint ("FAC") fails to plead facts sufficient to state a claim that Marriott International knowingly benefitted from and participated in the trafficking of J.L. The thrust of the Amended Complaint is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry. Other than alleging Marriott International owns the Sheraton brand, which was licensed to the independent owner and operator of the Sheraton Denver Tech Center hotel (the "Sheraton"), the Amended Complaint lacks any factual allegations that Marriott International knew, should have known, or even plausibly could have known that J.L. was being coerced into performing commercial sex acts against her will by

criminal traffickers. These defects were raised in Marriott International's motion to dismiss the original Complaint. But despite having had more than six months to correct these deficiencies or to include additional facts regarding the details of J.L.'s alleged trafficking at the local Sheraton hotel, the Amended Complaint does not add a *single* allegation to support her claim against Marriott International. Indeed, the Amended Complaint contains merely a single reference to a time when she "arrived at the Sheraton with three much older men," while the balance of allegations in **that same paragraph** reference events occurring at a Best Western hotel. FAC ¶ 125.[1] All other allegations of trafficking in the Amended Complaint reference other hotels that are not franchised under the Marriott brand. There is no single allegation of contact between Marriott International and the criminal trafficking venture or even Plaintiff. The Amended Complaint contains no detail about how Marriott International either knowingly benefitted from or participated in the trafficking of J.L. To the contrary, Plaintiff's Amended Complaint still contains nothing more than unsupported and improper legal argument (FAC ¶ 104) and conclusory allegations about what Marriott International should have known based on alleged generalized knowledge of sex trafficking that *had nothing to do with J.L.* (FAC ¶¶ 30-82) which only underscore how Plaintiff's case rests on an untenable construction of the TVPRA.

*Second,* the Amended Complaint also lacks factual allegations that Marriott International knew, or should have known, of the alleged trafficking of J.L. at the local Sheraton hotel. Indeed, the Amended Complaint does not include a *single* allegation of an incident occurring at the

---

[1] Counsel for Marriott International previously contacted Plaintiff's counsel before filing its Motion to Dismiss the *original complaint* as required by Local Rule 7-1, identified the potential misstatement in then ¶ 74, now ¶ 125, and inquired whether Plaintiff would amend the complaint to revise the error. Plaintiff's counsel did not respond to that effort and has neither corrected this error or added any new allegations of any trafficking of J.L. at the Sheraton.

Sheraton hotel that would supposedly have put Marriott on notice of J.L.'s trafficking. To the contrary, the factual allegations in the Complaint contradict that conclusion, alleging that J.L.'s trafficker took drastic measures to conceal his crimes, including subjecting J.L. to physical abuse, verbal abuse, psychological torment, kidnapping and false imprisonment. In other words, *J.L.'s trafficker prevented Marriott International (or anyone else) from learning of his crimes.*

*Third*, the Amended Complaint fails to plead sufficient facts to hold Marriott International vicariously liable for the actions (or inactions) of the staff at the local Sheraton hotel, a franchise property that was independently owned and managed by entities who Plaintiff has decided not to sue. Marriott International did not own or operate the hotel or employ any individuals at the local Sheraton hotel. As a result, the Amended Complaint asserts vicarious liability for the acts or omissions of the hotel staff simply because Marriott International had the right to enforce uniform standards under a franchise agreement, and to terminate that agreement if the hotel breached it. As a matter of law, those allegations cannot establish an agency relationship sufficient to subject Marriott International to vicarious liability.

## BACKGROUND

This lawsuit is part of a nationwide wave of dozens of cases filed in late 2019 and early 2020 using a boiler-plate form complaint seeking to hold hospitality industry participants liable under the TVPRA for sex trafficking. While the plaintiffs and defendants vary in each case, the lengthy complaints are virtually identical in their conclusory allegations: they allege the hospitality industry has turned a blind eye to sex trafficking; they assert that various defendant franchisors "control" the hospitality industry and therefore "participate" in sex trafficking at hotels; they list reports of sex trafficking at different hotels throughout the country; and they conclude with brief allegations about the criminal trafficker's acts against the plaintiff in each case. These complaints

have been amended a number of times now, but add no new facts to state a claim as to the specific incidents of alleged trafficking.

Plaintiff's Amended Complaint holds true to that form. It focuses on the phenomenon of sex trafficking generally, but includes only conclusory allegations against Marriott International in relation to J.L. For example, the Amended Complaint cites statistics, news articles, and policy reports on human sex trafficking (FAC ¶¶ 33-82) and generalities concerning the franchisors' alleged "control" over the hospitality industry (FAC ¶¶ 83-99), and their alleged awareness of prostitution crimes committed in other states (FAC ¶¶ 100-104). None of this relates to the alleged wrongdoing carried out against J.L. by her trafficker or her claim against the franchisors.

When it comes to telling J.L.'s story, the Amended Complaint tells a disturbing tale of her kidnapping and victimization by an unnamed trafficker. After running away from home, a friend introduced J.L. to a man in Denver who promised that he could help her make money to support herself. FAC ¶ 108. When J.L. met this man, he bludgeoned her with a gun, bound and raped her, and posted naked photos of her online, advertising her for commercial sex. FAC ¶ 109. From that point on, J.L. was trafficked throughout the Denver Tech Center area under the watch of armed guards. FAC ¶ 110. The trafficker concealed his crimes through physical and psychological violence; J.L. had virtually no contact with staff at the local area hotels. FAC ¶¶ 111, 119.

The Amended Complaint then asserts the bare legal conclusion that Marriott International somehow knew or should have known about these crimes, but makes no factual allegations to support that legal conclusion. FAC ¶¶ 131-141. ***Nowhere*** does the Amended Complaint allege facts suggesting that Marriott International was aware of the wrongdoing or participated in the sex trafficking of J.L. To the contrary, the Amended Complaint barely alleges any connection to the Sheraton hotel other than arriving there one time. FAC ¶ 125.

## LEGAL STANDARD

Considering a motion to dismiss under Rule 12(b)(6), courts require a plaintiff to allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Allegations made against groups of defendants, moreover, cannot withstand challenges under Rule 12(b)(6) because such allegations deprive each individual defendant of fair notice of what it is alleged to have done. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008).

## ARGUMENT

**I.    PLAINTIFF'S FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM**

Enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion. 18 U.S.C. §1591. Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. §1595(a) (emphasis added). The Amended Complaint does not allege that Marriott International was a "perpetrator" of the trafficking of J.L. Rather, it alleges in a conclusory manner

5

that Marriott International, among other national hotel franchisors, knowingly benefitted from and participated in a venture by an unnamed sex trafficker. The Amended Complaint is fatally defective, however, because it does not (and cannot) allege any facts suggesting that Marriott International plausibly knew or should have known about J.L.'s tormentor or knowingly benefitted from his wrongdoing, let alone "participated" in that wrongdoing.

### A. PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNEW OR SHOULD HAVE KNOWN" ABOUT THE SEX TRAFFICKING OF J.L.

The thrust of the Amended Complaint is that Marriott International "knew or should have known" (18 U.S.C. §1595(a)) that J.L. was being trafficked sometime after 2016 because "the hospitality industry" is complicit in sex trafficking. FAC ¶¶ 1, 33-82. These allegations are copied from other complaints filed throughout the country against many different franchisors, and have very little to do with Marriott International or J.L. Thus, as a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of J.L.'s alleged sex trafficking at the local Sheraton hotel. *See*, *e.g.*, *Misko v. Speedway, LLC*, 16-CV-13360, 2018 WL 2431638, at *10 (E.D. Mich. May 29, 2018) ("[G]eneral knowledge that a condition can materialize is not sufficient to create constructive knowledge of the existence of a particular condition at a specific time.") (internal quotations omitted); *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA claim where complaint did "not include a plausible allegation that Defendants saw the ad concerning Plaintiff Doe and knew it related to illegal sex trafficking"); *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5-6 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports

6

about human trafficking in Thailand and reports and letters by advocacy groups … [but] Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

The brief allegations about J.L. likewise lack any connection to Marriott International. To the extent the allegations say anything about the hotels, they are generic or refer to a different hotel. With respect to the local Sheraton hotel, the Amended Complaint still does not even allege that Plaintiff engaged in commercial sex activity at the hotel. *See* FAC ¶ 125. The Amended Complaint also alleges no contact with any hotel staff, none of whom were Marriott International employees in any event. Simply put, Plaintiff alleges no facts to suggest any plausible inference that Marriott International knew or should have known of J.L.'s alleged criminal trafficking against her will for commercial sex acts at a franchise hotel by a trafficking venture.

### B. PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL "KNOWINGLY" BENEFITTED FROM A SEX TRAFFICKING VENTURE

Additionally, for the same reasons, Plaintiff's claim must be dismissed because the Amended Complaint does not allege that Marriott International "knowingly" benefitted from a sex trafficking venture. 18 U.S.C. §1595(a). Apart from reciting conclusory labels, the Amended Complaint alleges only that Marriott International "directly benefitted from the trafficking of J.L. on each occasion they received payment for rooms that she was being kept in [its] hotels." FAC ¶ 162. But the Amended Complaint pleads no facts plausibly suggesting that Marriott International, the franchisor, had any reason to suspect that the rooms were used to commit sex trafficking crimes as alleged by the Amended Complaint. *See supra* Part I.A. The mere collection of rent by an unrelated hotel manager from guests in the ordinary course of business cannot support a reasonable inference that a franchisor such as Marriott International "knowingly" benefited from crimes

7

committed in those rooms. *See*, *e.g.*, *Canosa v. Ziff*, 18 Civ. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (internal citations omitted) (noting that a defendant cannot be held liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

### C. PLAINTIFF FAILS TO ALLEGE MARRIOTT INTERNATIONAL'S "PARTICIPATION" IN A SEX "TRAFFICKING VENTURE"

Next, the Amended Complaint falls woefully short of alleging any facts to support the conclusion that Marriott International "participated" in a trafficking "venture." 18 U.S.C. §1595(a). Granting motions to dismiss similar complaints filed by several national hotel franchisors, the Northern District of Georgia court recently held that:

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) knowledge as to the benefit received from trafficking; (2) knowledge as to 'assisting, supporting or facilitation' trafficking; and (3) knowledge that the Plaintiff was either a minor or subject to force.

*Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (internal citation omitted) (emphasis added); *see also K.R. v. G6 Hospitality, LLC, et al.*, No. 3:19-cv-08252-VC, ECF. No. 44 (N.D. Cal. June 2, 2020) ("But the complaint does not appear to adequately allege that the chains, who are the actual defendants in the case, themselves participated in that [sex trafficking] venture").[2] Application of this analysis to the Amended Complaint leads to the same result here. As an initial matter, there is no allegation that Marriott International had any association with a "sex trafficking venture." The only "venture" that Marriott International is alleged to have is a lawful relationship with its franchisees. Yet the only "venture"

---

[2] *See also Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020); and *Jane Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020).

relevant for purposes of the TVPRA is the "sex trafficking venture" committed by unnamed criminals—with whom the Amended Complaint does not suggest that Marriott International had any association. Similarly, the United States District Court for the Northern District of California recently found upon review of a nearly identical complaint that "the complaint does not appear to adequately allege that the [hotel] chains, who are the actual defendants in the case *participated* in that [sex trafficking] venture." *K.R. v. G6 Hospitality, LLC, et al.*, 19-cv-08252-VC, ECF No. 44 (N.D. Cal. June 2, 2020) (emphasis added).

Under the TVPRA, a "venture" only exists when there is a common "purpose" among the participants. *Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019). *Bistline*, and its discussion of *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017), are instructive. In *Ricchio*, motel operators (the Patels) and an alleged trafficker (McLean) "had previously collaborated in unspecified 'commercial dealings.'" *Bistline*, 918 F.3d at 874 (citing *Ricchio*, 853 F.3d at 555). While the victim (Ms. Ricchio) was held captive:

> McLean and Mr. Patel enthusiastically expressed [intent to reinstate these commercial dealings] by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels.

*Id.* (quoting *Ricchio*, 853 F.3d at 555) (internal alterations by *Bistline* Court). In other words, the complaint adequately alleged that the motel operators knowingly benefited from participating in a sex-trafficking venture because they "knowingly" rented the room to the trafficker for the purpose of trafficking the plaintiff. *Ricchio*, 853 F.3d at 555-56. Participation was satisfied based on conduct with the traffickers and knowledge of the specific criminal trafficking of plaintiff.

Likewise, in finding a "venture" adequately alleged under the TVPRA, the Tenth Circuit noted that the defendants "had ample notice of the illegal activities which were taking

9

place…while they were actively seeking to enforce [Warren] Jeffs' control and simultaneously protecting him from any liability." *Bistline*, 918 F.3d at 874. The Court noted that "plaintiffs allege that defendants and Mr. Jeffs 'actively discussed [Jeffs'] illegal goals' … and that Mr. Jeffs retained defendants' legal counsel for the purpose of developing a scheme to 'cloak' forced labor and ritual rape of young girls 'with the superficial trappings of legal acceptance'… " *Id.* at 875. In other words, alleging a TVPRA claim requires plausible factual allegations of participation in a "common purpose" *with the perpetrators*. In stark contrast to the diabolical "purpose" at issue in *Bistline*, the Amended Complaint here does not (and cannot in good faith) plead *any* such "common purpose" between Marriott International and J.L.'s unnamed trafficker. Accordingly, it should be dismissed with prejudice.[3]

In the RICO context, persons must be "associated together *for a common purpose*" in order to be "associated in fact." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added); *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017). The same principle applies to the TVPRA here: Marriott International and J.L.'s trafficker must be "associated together for a common purpose" in order to establish liability. The Amended Complaint does not (and cannot in good faith) allege any such purpose with J.L.'s trafficker. *See also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Because guilt, or in this case liability,

---

[3] This conclusion also comports with standard canons of statutory construction. As recognized by the Tenth Circuit, the TVPRA defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)). *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals *associated in fact*, whether or not a legal entity" (emphasis added)) *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals *associated in fact* although not a legal entity") (emphases added)). Where (as here) Congress uses similar language in two statutes, it is "presume[d] that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005).

cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture… In other words, some participation in the sex trafficking act itself must be shown."); *Geiss v. Weinstein Co. Holdings LLC*, No. 17 CIV. 9554 (AKH), 2019 WL 1746009, at *7 (S.D.N.Y. Apr. 18, 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities …") (internal citation omitted, emphasis in original)).

The Amended Complaint altogether fails to allege that Marriott International "participated" in a "venture." Those are the terms used in the statute yet there are no allegations that Marriott International shared (let alone participated in) a "common purpose" with J.L.'s trafficker. If Marriott International did not even know and could not plausibly have known about the sex trafficking venture, it follows that it did not and could not have "participated" in that venture.

### D. THE COMPLAINT RELIES ON IMPERMISSIBLE AND IRRELEVANT "COOKIE-CUTTER" ALLEGATIONS

The implausibility of the Amended Complaint is further demonstrated by the fact that the Plaintiff has merely copied and pasted "cookie-cutter" or boiler-plate allegations from the pleadings of other, unrelated TVPRA litigants, filed in different states around the same date, as part of a failed effort to consolidate claims against the hotel industry generally. *See*, *e.g.*, *K.R. v. G6, et al.*, 3:19-cv-08252-VC (N.D. Cal. 2019); *C.K. v. Wyndham Hotels and Resorts, Inc., et. al.*, No. 3:19-cv-01412-J-20PDB (M.D. Fla. 2019). Following *Twombly* and *Iqbal*, *supra*, federal courts throughout the country have condemned the practice of using such "form complaints" as a badge of inadequate pleading. In dismissing one such complaint, the court explained:

> Plaintiff's complaint is a form complaint that "makes generalized allegations regarding practices of the mortgage lending industry" and is "devoid of particularized factual allegations against Defendant." … *[O]ther courts both within and outside of this district have had almost identical complaints on their dockets.* … Plaintiff has

11

> *apparently simply copied and pasted the form complaint to create her own complaint*, and her complaint contains no allegations specific to her mortgage transaction.

*Shabazz v. Bank of America*, No. 1:10-cv-0813, 2010 WL 11647333, at *2 and n.1 (N.D. Ga., Oct. 26, 2010) (internal citations omitted, emphasis added).

This case represents a paradigmatic example of improper "form" pleading. As in each other TVPRA case above, the Amended Complaint here alleges the vague legal conclusions that Marriott International knew or should have known about the sex trafficking committed against different victims and failed to take reasonable measures to discover and prevent those crimes. While the use of form complaints (as here) is always a clear sign of inadequate pleading, it is particularly inappropriate in the context of TVPRA claims, which cabins civil liability upon specific proof of criminal acts by those who actively and knowingly participate in sex trafficking ventures. *See supra* Part I.A-C.

## II. PLAINTIFF FAILS TO STATE A CLAIM BASED ON AGENCY PRINCIPLES

In the Amended Complaint, the Sheraton is the only hotel at which J.L. was allegedly trafficked and with which Marriott International has a franchisor-franchisee relationship. FAC ¶¶ 22.g, 104.a. The Amended Complaint alleges, in a conclusory manner and without support, that the franchise relationship with the Sheraton hotel renders Marriott International vicariously liable for J.L.'s alleged trafficking based on an actual or apparent agency theory.

Section 1595(a) extended civil liability beyond the criminal perpetrators ***only to*** those who knowingly benefit from participation in ventures with the criminals – the statute ***did not*** extend liability even further to franchisors based on the alleged participation by staff of a franchisee. There is no language in the TVPRA that allows secondary liability in the context of franchisor agency. *Accord Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (dismissing an aiding

12

and abetting claim under § 1595(a) and finding secondary liability is not available where the statute is silent). Accordingly, Plaintiff's attempt to imply secondary liability for franchisors under § 1595(a) should be rejected.

Even if secondary liability were available under the TVPRA, the Amended Complaint also makes the unsupported assumption that Marriott International's status as a franchisor makes it responsible for the acts or omissions of the local Sheraton hotel's staff with respect to J.L.'s trafficking. That assumption is not correct and the Amended Complaint lacks sufficient allegations to support vicarious liability. *J.C. v. Choice Hotels International, Inc., et al.*, No. 20-cv-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) (noting that the theories of liability against the franchisors, as opposed to the local hotels, "seem confused"); *K.R. v. G6 Hospitality, LLC,* No. 3:19-cv-08252-VC, ECF No. 44 (N.D. Cal. June 2, 2020) ("[W]hether the complaint states a claim under the TVPRA against the chains appears to depend on whether the chains are liable for the conduct of the local hotels in facilitating sex trafficking."). The Amended Complaint fails to state a claim for agency as a matter of law.[4]

Applying federal common law of agency, the Amended Complaint fails to alleged facts showing that Marriott International exercised control over the particular instrumentality of the harm to Plaintiff. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018) (under federal common law of agency the court looks to "the extent of control exercised by the [principal]

---

[4] Considering motions to dismiss in two similar cases pending in the Northern District of California, both courts questioned the application of state law of agency to claims arising under the TVPRA, a federal statute. *See J.C.*, 2020 WL 3035794, at *1; *K.R. v. G6 Hospitality, LLC, et al.*, No. 3:19-cv-08252-VC, ECF. No. 44 (N.D. Cal. June 2, 2020). Where liability based on a theory of agency is permitted for claims involving a federal statute, and where the statute silent on choice of law, the court may "apply the general, federal common-law principles of vicarious liability to fill in the statute's ambiguity." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1226 (D. N.M. 2019).

13

[as] the essential ingredient.") (citations omitted); *Arguello v. Conoco,* 207 F.3d 803, 807 (5th Cir. 2000) (no agency liability where franchisor had no "participation in the daily operations of the branded stores nor that [the franchisor] participates in making personnel decisions"); *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 2012 WL 178341, at *21 (W.D. Va. Jan. 23, 2012) (no agency liability under federal common law where defendant did not have "control over the actions of which [plaintiff] complains").

Even applying the control test under Colorado law, Plaintiff's claim still fails. As explained in *Corrales v. Days Inn Worldwide, Inc.*, actual agency requires a franchisor's exercise of control over "managing day-to-day operations" of the hotel. No. 04-CV-149, 2005 WL 4655135, at *1 (D. Colo. Dec. 5, 2005). The court held that "[s]tandards, training, inspection, and the right to terminate the license agreement do not alone establish sufficient control to charge [the franchisor] with liability for injuries sustained by a guest in connection with the operation of the [franchisee's] facility." *Id*. Instead, a franchise agreement, and the actions of the parties in furtherance of that agreement, "establish no more than standards to safeguard the uniformity, value and integrity of the franchise system" and are not sufficient to satisfy the element of control necessary for a claim. *Id*.[5]

These principles compel the same result here. The Amended Complaint contains no factual allegation of Marriott International's control over the day-to-day operations or security at the local Sheraton hotel or any instrumentally of the alleged harm. To the contrary, the Amended Complaint alleges "actual control over its franchisees through control over the brand standards which are

---

[5] *See, e.g., Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015); *see also N.T. v. Taco Bell Corp.,* No. 19-1028, 2019 WL 4168807 (D. Kan. Sept. 3, 2019); *Cha v. Hooters of America*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012).

reflected through the franchise agreements….&quot; FAC ¶ 94. This is insufficient as a matter of law for vicarious liability.[6]

## CONCLUSION

For all the foregoing reasons, Marriott International respectfully requests that this Court dismiss the Plaintiff's claim against Marriott International in its entirety and with prejudice, and to grant such other and further relief as the Court deems just and proper.

Dated:  June 29, 2020.                                    Respectfully submitted,


*s/ Kathryn A. Reilly*
Kathryn A. Reilly
Chuan "CiCi" Cheng
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:   reilly@wtotrial.com
             cheng@wtotrial.com

Attorneys for Defendant Marriott International, Inc.

---

[6] Plaintiff's apparent agency theory also fails. Apparent authority is created by words or conduct of the principal which, reasonably interpreted, causes a plaintiff to believe that the principal consents to the agent acting on his behalf. *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990). There are no facts alleged that J.L. relied on Sheraton's authority or that that such belief was generated by Marriott International's words or conduct. And the allegation that J.L. was trafficked in hotels *against her will*—is logically incompatible with the notion that J.L. somehow "relied" on a representation by Marriott International.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on June 29, 2020, I electronically filed the foregoing **DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

                                                 *s/ Claudia Jones for Kathryn A. Reilly*