**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03713-STV

J.L., an individual,

    Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC.;
HYATT CORPORATION;
WYNDHAM HOTELS AND RESORTS, INC.; AND
MARRIOTT INTERNATIONAL, INC.,

    Defendants.

---

**SELECT HOTELS GROUP, LLC (IMPROPERLY NAMED AS, "HYATT CORPORATION")'S MOTION TO DISMISS**

---

Select Hotels Group, LLC (improperly named as, "Hyatt Corporation") (hereinafter, "Hyatt"), by and through its undersigned counsel, respectfully moves this Court for an entry of an order dismissing Plaintiff's Complaint (Dkt. 65) with prejudice.

Hyatt submits the accompanying Memorandum of Law in Support of its Motion to Dismiss, filed concurrently herewith. As set forth in the accompanying memorandum of law, the Court should grant Hyatt's motion and dismiss Plaintiff's Amended Complaint.

WHEREFORE, Hyatt respectfully requests the Court grant Hyatt's Motion to Dismiss, dismiss the Amended Complaint with prejudice, and grant any other relief this Court deems just and proper.

Dated: June 29, 2020.

                    Respectfully submitted,

                    WILSON, ELSER, MOSKOWITZ,
                    EDELMAN & DICKER LLP

By:   */s/Marisa A. Trasatti*
       Marisa A. Trasatti (Bar No. 25663)
       500 East Pratt Street
       Suite 600
       Baltimore, MD 21202
       Tel. (410) 962-8408
       Fax (410) 962-8758
       Email: Marisa.trasatti@wilsonelser.com
       (Appearance entered on 3/3/2020)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of June, 2020, the foregoing was served on counsel of record through the Court's electronic filing system, and to all parties without an appearance by conventional mail.

                    WILSON, ELSER, MOSKOWITZ,
                    EDELMAN & DICKER LLP

By:   */s/Marisa A. Trasatti*
       Marisa A. Trasatti (Bar No. 25663)
       500 East Pratt Street
       Suite 600
       Baltimore, MD 21202
       Tel. (410) 962-8408
       Fax (410) 962-8758
       Email: Marisa.trasatti@wilsonelser.com

### SELECT HOTELS GROUP, LLC (IMPROPERLY NAMED AS, "HYATT CORPORATION")'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS

Select Hotels Group, LLC (improperly named as, "Hyatt Corporation") (hereinafter referred to as, "Hyatt") moves to dismiss the Amended Complaint [Dkt. 65] for failure to state a claim under Rule 12(b)(6), and in support thereof states as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, undersigned counsel certifies that the parties conferred as to the substance of this motion. Plaintiff opposes the relief requested herein.

### RECAP OF ARGUMENTS

Plaintiff's Amended Complaint should be dismissed. Despite numerous requests by Hyatt for Plaintiff to name the proper Hyatt entity, Plaintiff again improperly named "Hyatt Corporation" in her Amended Complaint. Suit and service of process are thus insufficient.[1] Second, the Amended Complaint is a shotgun pleading in violation of Federal Rule 8(a) and should be dismissed. Third, the Amended Complaint should be dismissed because it fails to state a claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA" or "Section 1595").

The facts as pled in J.L.'s Amended Complaint remain inadequate as a matter of law. Hyatt adopts its prefatory comments set forth in its original Motion to Dismiss filed on March 23, 2020 [Dkt. 40] for the sake of brevity and to avoid duplicative filings. The question in the amended pleading remains not whether J.L. suffered egregious harm as a result of the alleged facts. Rather,

---

[1] The entity implicated by Plaintiff's allegations – Select Hotels Group, LLC ("SHG") – still has not been served; though, undersigned counsel agreed to accept service if Plaintiff would dismiss the improperly named Hyatt entity, prior to this motion being filed. SHG does not waive proper suit and service.

3

the question is whether the Amended Complaint adequately alleges that Hyatt is a proper Defendant that can be held civilly liable pursuant to Section 1595 for the crimes perpetrated by J.L.'s trafficker. The answer is, "No." The Amended Complaint still does not, and cannot, plausibly allege that Hyatt is directly or indirectly liable under Section 1595(a), and accordingly, Hyatt should be dismissed.

## FACTUAL BACKGROUND

Plaintiff's Amended Complaint [Dkt. 65] makes no additional factual contentions beyond that which was contained in the initial pleading. That is, the same pleading inadequacies identified in the initial Complaint carried over into the Amended Complaint. Plaintiff alleges, in pertinent part, that she was a victim of sex trafficking for over one (1) month in 2016[2] by traffickers at several hotels in the Denver Tech Center, including Best Western® Plus, La Quinta® Inn & Suites, Hyatt Place®, and Sheraton®. *See* Am. Compl. at ¶¶ 7, 106-130. The Amended Complaint alleges that the traffickers "shuttled" Plaintiff between the hotels to avoid detection and exposure. *Id.* at ¶¶ 7, 110, 124.

The Amended Complaint further alleges that as a hotel operator, Hyatt controls the training and policies for its branded properties including the Hyatt Place® where J.L. was trafficked. *Id.* at ¶ 18(b). Moreover, the Amended Complaint avers that "Hyatt receives a percentage of the gross room revenue … from the rate charged for the rooms in which Plaintiff was sex trafficked." *Id.* at ¶ 18(d).

The Amended Complaint asserts the above allegations against all Defendants, including

---

[2] Plaintiff's Amended Complaint and Motion for Protective Order [Dkt. 8] vaguely state the length of time J.L. was trafficked. While both filings indicate that her trafficking occurred in 2016, the Amended Complaint alleges that she was imprisoned by her traffickers "for <u>over a month</u>," *see* Am. Compl. at ¶ 7, while the Motion for Protective Order represents that the trafficking occurred "[f]<u>or several weeks</u> in 2016," (emphasis added). *See* Dkt. 8, p. 1.

Hyatt. Likewise, the Amended Complaint summarily alleges that all Defendants had "actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels," such that "had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, the apparent red flags outlined above would have been impossible to miss." *Id.* at ¶¶ 129-130. The Amended Complaint then claims that Hyatt is liable under Section 1595 because "[b]y and through its relationship with the staff at the Hyatt Place® where J.L. was trafficked and the perpetrator who trafficked J.L. at the Hyatt Place® while registered as a guest there, Hyatt knowingly benefitted, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking." *Id.* at ¶ 18(c).

In December 2019, J.L. filed this lawsuit sounding in one count under TVPRA. With leave from the Court to amend, Plaintiff amended her Complaint, making very few substantive changes that do not impact the proper outcome of this motion, which should be granted as to Hyatt.

## LEGAL STANDARDS

### A. Rule 8 – General Rules of Pleading

The twin purposes of a complaint are to (1) give the opposing parties fair notice of the basis for the claims against them so that they may respond; and (2) to allow the court to conclude that the allegations, if proven, show that plaintiff is entitled to relief. See *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. See *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991). Specifically, Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)'s intent is reinforced by Rule 8(d)(1),

5

which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8. See *Greenway Nutrients v. Blackburn*, 33 F. Supp. 3d 1224, 1242-43 (D. Colo. 2014).

Recently, Colorado federal courts have strongly criticized the use of "shotgun pleading" noting that "[t]ypically this defect occurs when the plaintiff sues a large number of defendants for a series of discrete events in which not every defendant participated in completely; nevertheless, the pleader lazily asserts claims against 'the defendants' generally, without attempting to sort out the individual actors alleged to be liable for each individual action or discrete claim." *Jacobs v. Credit Suisse First Boston*, Case No. 11—cv—00042-CMA-KLM, 2011 U.S. Dist. LEXIS 112967, 2011 WL 4537007, *6-7 (D. Colo. Sept. 30, 2011).

### B.  Standard for Rule 12(b)(6) – Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), "the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative." *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1044 (D. Colo. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Courts, therefore "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* Allegations made on "information and belief" are given no weight in determining the sufficiency of a pleading. *See, e.g., Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013).

6

## ARGUMENTS

### I. "Hyatt Corporation," A Misnomer, Is Improperly Named In Both The Summons And Amended Complaint, Warranting Dismissal.

Hyatt adopts the argument set forth in its original Motion to Dismiss filed on March 23, 2020 [Dkt. 40], regarding the improper naming of Hyatt Corporation in the summons, Complaint, and now the Amended Complaint. Between February 4, 2020 and June 29, 2020, counsel for Hyatt has reached out to Plaintiff's counsel via phone and e-mail requesting dismissal and substitution of the proper Hyatt entity. To date, however, Plaintiff's counsel has not been able to confer with undersigned counsel by phone, and thus, Hyatt requests that "Hyatt Corporation" be dismissed with prejudice and that "Select Hotels Group, LLC" be substituted in the case caption.

### II. Plaintiff's Amended Complaint Should Be Dismissed Because It Is An Impermissible Shotgun Pleading.[3]

Hyatt adopts the shotgun pleading arguments set forth in its original Motion to Dismiss filed on March 23, 2020 [Dkt. 40] and co-Defendants' renewed motions to dismiss the Amended Complaint, to the extent consistent with Hyatt's position.

Briefly, the Amended Complaint here is riddled with generalizations, often referring to "hotels" and "Defendants" collectively, when describing factual allegations regarding both the trafficking and the Defendants' knowledge thereof. *See, e.g.*, Am. Compl. at ¶¶ 129, 131-143. For Counts One through Four, Plaintiff incorporates all prior paragraphs, including allegations in Counts against other Defendants. Am. Compl. at ¶¶ 144, 149, 154, 159. Notably still absent from

---

[3] The Amended Complaint is also a "form" pleading that should be dismissed. Plaintiff continues to copy and paste boiler-plate allegations relating to trafficking and the hospitality industry in general from the out-of-state pleadings of other, unrelated TVPRA cases in an attempt to salvage her claims. Some of those unrelated actions have since been voluntarily dismissed by the prosecuting firm. *See, e.g., F.M. v. Best Western Int'l, Inc., et al.*, No. 3:19-cv-02901 (N.D. Tex. 2019).

7

Plaintiff's Amended Complaint are specific factual allegations against Hyatt, such as specific conduct, individuals, dates, or times.[4]

Like the factual background, the conclusions as to Hyatt in the Amended Complaint mirror those set forth in the original Complaint. The Amended Complaint alleges in conclusory fashion that Hyatt "knowingly benefited" by "participating in" a venture it "knew, or should have known" was a sex-trafficking venture. *See, e.g., id.* ¶¶ 131-143.[5] Nothing in the Amended Complaint explains how Hyatt could have had the requisite knowledge that a particular individual—J.L.— was being trafficked at any particular hotel at any particular time, or how Hyatt took any action related to J.L.'s trafficking, caused J.L.'s trafficking, or knowingly benefited from participation in her sex trafficking venture.

Just like the original Complaint, the Amended Complaint remains short on facts sufficient

---

[4] In a February 7, 2020, motions hearing relating to an almost identical Complaint against hotel defendants for violations of the TVPRA in the U.S. District Court for the Northern District of Georgia, The Honorable Judge William M. Ray II stressed it is unacceptable for a Complaint to be full of conclusions and short on facts. See February 7, 2020, Hearing Transcript, p. 5-6, ll. 24-25; 1-8. *Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR. Judge Ray's opinion is cited as the latest available persuasive, non-binding authority for the Court's review given the standards applicable to motions to dismiss.

[5] A Complaint that fails to distinguish between individual defendants and specific conduct that suggests liability, such as the present Complaint, cannot survive a Motion to Dismiss. In the Northern District of Georgia, Judge Ray granted Defendant Choice's Motion to Strike, finding that:

> Plaintiff's current Amended Complaint contains redundant, immaterial, impertinent or scandalous matter including "puffing" about sex trafficking and what it is and why it's bad. Such matters have no bearing on issues in this case and could serve to prejudice Defendants and confuse the facts at issue. Furthermore, the Amended Complaint is full of conclusions and short on specific facts.

*See* April 13, 2020, Orders. *Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR. While Judge Ray allowed Plaintiff to file an amended pleading, she was ordered to recast her complaint, removing all general allegations about sex trafficking or the sex trafficking industry not related to a specific Defendant.

to support a claim that Hyatt specifically violated the TVPRA based on a trafficking crime that occurred at Hyatt Place® in Denver, Colorado and therefore, the Amended Complaint should be dismissed as an impermissible shotgun pleading.

### III. The Amended Complaint Fails To State A Cognizable Claim Under Section 1595(a).

Finally, the Amended Complaint should be dismissed because it fails to allege that Hyatt is directly liable under Section 1595(a). To state a claim under Section 1595(a), a plaintiff must allege sufficient facts to show that a defendant: (1) "knowingly benefit[ed], financially or by receiving anything of value from," (2) "participation in a venture," (3) "which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). In contrast, the facts against Hyatt in Plaintiff's Amended Complaint merely allege that she was trafficked at unspecified dates in 2016 at various locations in the Denver Tech Center, including but not limited to, Hyatt Place® Denver Tech Center, that she would meet buyers in the lobby with her trafficker or an enforcer, that all Defendants knew or should have known J.L. was being trafficked because she was arrested on an unspecified property's grounds, and that Hyatt received revenues from the reservation of rooms in which she was trafficked.[6] These facts are woefully inadequate to establish any of the elements required by Section 1595(a). Accordingly, the

---

[6] Judge Ray also cast doubt on the argument that if someone receives money unknowingly that originated from an illegal enterprise, they are liable for civil damages:

> So this isn't the right term. But if -- your argument is that if someone receives money that would have come through – originated with some illegal enterprise, whether they knew it or not, that they're liable for civil damages?

*See* February 7, 2020, Hearing Transcript, p. 49, ll. 13-17, *Jane Doe 1, et al. v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR. Again, while Judge Ray was principally concerned with a franchisor's knowledge and potential liability, the same logic applies here to an owner/operator that is not regularly on-site.

9

Amended Complaint does not plausibly allege that Hyatt is liable under Section 1595(a).

### a. The Amended Complaint fails to allege sufficiently that Hyatt participated in a venture.

First, the Amended Complaint fails to allege any legally sufficient facts to show that Hyatt "participat[ed] in a venture" with J.L's trafficker. *See* 18 U.S.C. § 1595(a). The concept of participation in a venture is well settled—both in surrounding statutory text and at common law. Congress defined "venture" as "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* § 1591(e)(4).

Courts have thus held that "participation in a venture" must involve more than a defendant's "mere negative acquiescence" in sex trafficking. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (unpub.). Participation connotes action, not inaction. "[M]ere association" in some endeavor "criminal or otherwise" is not enough. *Id.* at 284. Instead, the defendant must have "actually participated in a sex-trafficking venture" by "commit[ting] some 'overt act' that furthers the sex trafficking aspect of the venture." *Id.* at 286; *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (same).

It is well-established under federal law that participation in a venture requires knowingly performing an overt act in furtherance of an agreement to pursue a common purpose and share in profits and losses. For purposes of aiding and abetting liability, for example, one is an "active participant" when he "has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope." *See Rosemond v. United States*, 572 U.S. 65, 77–78 (2014). (2004).

In order to be found liable under Section 1595(a), a defendant must have participated in a venture; this Court should give those terms their ordinary meaning. *See, e.g., Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("As usual, our job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" (*quoting Perrin v. United States*, 444 U.S. 37, 42 (1979)). That ordinary meaning—which flows from the elements contained in the dictionary definitions and law highlighted above—is that the defendant must have entered into an agreement (express or implied) with a trafficker and performed an overt act to further some common purpose and share both profits and losses.

Moreover, "participation" in a sex trafficking venture requires an overt act; nonfeasance or a failure to prevent a crime is insufficient. *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) ("mere negative acquiescence" is not enough); *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *4; *cf. United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that the defendant committed an overt act designed to aid in the success of the venture."). Here, the Amended Complaint altogether fails to allege that Hyatt "participated" in any "sex trafficking venture." Even if sex trafficking occurred at a hotel, it simply does not follow that any entity affiliated with that hotel, let alone the franchisor, is therefore liable for resulting harm.

First, there is no allegation that the managing entity, SHG, had any association with a "sex trafficking venture." But even more broadly, the Amended Complaint simply never suggests that any Hyatt entity had any association with the unnamed criminals responsible for the sex trafficking venture alleged.

Second, and more fundamentally, Plaintiff never alleges that Hyatt committed any overt

11

act in furtherance of that sex trafficking venture. As a matter of law, alleged nonfeasance is insufficient. The Amended Complaint merely asserts that "Defendants … actively participated in this illegal endeavor by knowingly or negligently providing lodging to J.L.'s trafficker in which to harbor J.L. while he was trafficking her" and "by knowingly or negligently providing lodging to those who purchased sex from J.L." Am. Compl. at ¶¶ 134, 136. Yet it fails to assert any factual allegations to support that conclusion. Hyatt did not know and could not have known about the sex trafficking venture; it likewise did not and could not have "participated" in any such venture. Because the Amended Complaint has not alleged any facts showing that Hyatt entered into any agreement with J.L.'s traffickers, or that Hyatt engaged in any overt acts in furtherance of J.L.'s traffickers' criminal schemes, the Amended Complaint fails as a matter of law to plausibly allege that Hyatt participated in a venture with J.L.'s traffickers.

### b. The Amended Complaint fails to allege sufficiently that Hyatt knew or should have known the alleged venture engaged in sex trafficking.

Even if the Amended Complaint had plausibly alleged that Hyatt entered into a venture with J.L.'s traffickers, the Amended Complaint has not alleged adequately that Hyatt "knew or should have known" that the venture's purpose was sex trafficking. *See* 18 U.S.C. § 1595(a). Federal courts have generally associated the "knew or should have known" standard with actual knowledge or reckless disregard. *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.) (referencing reckless disregard); *cf. Gilbert v. U.S. Olympic Comm.*, No. 18-CV-00981, 2019 WL 4727636, at *15–16 (D. Colo. Sept. 27, 2019). One judge in the Southern District of Ohio has also interpreted "should have known" to constitute a "constructive knowledge" requirement. *See M.A.*, 2019 WL 4929297, at *6–7; H.H., 2019 WL 6682152, at *3.

Here, the Amended Complaint has failed to allege plausibly that Hyatt knew or recklessly disregarded—or even constructively knew—that it was participating in J.L.'s sex-trafficking

12

venture. First, while the Amended Complaint spends considerable time discussing trafficking issues in the hotel industry at large[7], (*see* Am. Compl. at ¶¶ 33–82), "general reports about human trafficking" are insufficient to establish that Hyatt knew or should have known that the alleged venture was engaged in a *specific* act of sex trafficking of this *specific* plaintiff. *See Ratha*, 2017 WL 8293174, at *5.

Second, pointing to a random collection of media reports, the Amended Complaint alleges that Hyatt has "demonstrated willful blindness to the rampant sex trafficking" that previously occurred at Hyatt hotels. Am. Compl. at ¶ 102(j)(i)-(iv). As an initial matter, all but one of the incidents cited by Plaintiff allegedly occurred *after* the incidents alleged in the Amended Complaint. *Id.* The Amended Complaint fails to demonstrate how one (1) incident that allegedly occurred *before* the incidents alleged in the Amended Complaint, and three (3) incidents that occurred *after* those alleged in the Amended Complaint impute knowledge to Hyatt of J.L's alleged sex trafficking three years prior.

Beyond the irrelevance of the specific news articles cited in the Amended Complaint, as a factual matter Plaintiff fails to allege how SHG could have been aware that J.L. was being trafficked at the Hyatt Place® over a one-month period in 2016. The Amended Complaint also references one negative Yelp review posted after the time period of the Complaint's allegation, but does not indicate how this review imputes knowledge of alleged sex trafficking years prior.

Finally, the Amended Complaint alleges that Hyatt knew or should have known that it was engaged in a sex-trafficking venture along with the traffickers because "J.L. was arrested on property grounds, constantly entertained traffic to appease her traffickers' daily quotas, and her

---

[7] Plaintiff's Amended Complaint also peppers in extremely vague and general allegations against Defendants collectively. This is yet another example of Plaintiff's shotgun pleading approach.

traffickers would help check her in then not proceed to the room; behavior that indicated they were using the Defendants' hotels for his illegal sex trafficking venture." Am. Compl. at ¶ 133. The Amended Complaint fails to allege, however, specific conduct that occurred at Hyatt Place® that would have imputed onto Hyatt knowledge of an illegal sex trafficking venture. *See also Iqbal*, 556 U.S. at 678 (citations omitted) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

Accordingly, the Amended Complaint fails to plead sufficiently that Hyatt knew or should have known that it was participating in a venture (with a common purpose and the goal of turning a profit) that was engaged in the illegal sex trafficking of J.L.

### c. The Amended Complaint fails to allege sufficiently that Hyatt knowingly benefited from the alleged venture.

The Amended Complaint also fails to allege adequately that Hyatt "knowingly benefit[ed]" from the alleged sex-trafficking venture. *See* 18 U.S.C. § 1595(a). A knowing benefit is more than a mere benefit. For that reason, there must be "a causal relationship" between a defendant's "affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss*, 383 F. Supp. 3d at 169; *see also Canosa*, 2019 WL 498865, at *24 (same). And, where a defendant benefits "in spite of," rather than "because of," a trafficker's actions, that is not a sufficient causal relationship. *Geiss*, 383 F. Supp. 3d at 169–70.

The Amended Complaint alleges that Hyatt (along with the other Defendants) benefits "by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade." Am. Compl. at ¶ 138, 140, 142, 152. The Amended Complaint also alleges that Hyatt benefited by receiving payments for the rooms in which J.L. was

14

trafficked. *Id.* But these allegations are insufficient to establish a knowing benefit when all that is alleged is that it received money for the room rental, as a hotel does from any guest.

Hyatt works to prevent trafficking at its hotels, and, devotes considerable resources to prevent sex trafficking within its sphere of influence. Moreover, trafficking poses risks to hotel guests and a significant threat to Hyatt's reputation. There is no plausible argument – nor any alleged facts – that Hyatt benefits from sex trafficking. And, if Hyatt benefited at all during J.L.'s trafficking, those benefits necessarily accrued "in spite of," rather than "because of," the traffickers' actions. *Geiss*, 383 F. Supp. 3d at 169–70.

## CONCLUSION

Accordingly, Hyatt respectfully requests that the Court either dismiss Plaintiff's Amended Complaint and/or dismiss Count Two against Hyatt, with prejudice.

Dated: June 29, 2020

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: */s/Marisa A. Trasatti*
Marisa A. Trasatti (Bar No. 25663)
500 East Pratt Street
Suite 600
Baltimore, MD 21202
Tel. (410) 962-8408
Fax (410) 962-8758
Email: Marisa.trasatti@wilsonelser.com
(Appearance entered on 3/3/2020)