UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| J.L., an individual,<br><br>Plaintiff,<br><br>BEST WESTERN INTERNATIONAL, INC.;<br>HYATT CORPORATION; WYNDHAM<br>HOTELS AND RESORTS, INC.; AND<br>MARRIOTT INTERNATIONAL, INC.;<br><br>Defendants. | CIVIL ACTION NO. 1:19-CV-03713-PAB-STV<br><br>Chief Judge Philip A. Brimmer<br>Magistrate Judge Scott T. Varholak |

**DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S REPLY MEMORANDUM
FOR ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Best Western International, Inc. ("BWI") submits the following memorandum in reply to plaintiff's Response and in further support of its Motion to Dismiss. Plaintiff's Response does not address the numerous pleading deficiencies in her First Amended Complaint. She inaccurately alleges that BWI owns and operates the Best Western branded hotel identified in the Complaint, and asserts that BWI's Motion "noticeably lack[ed]…factual support" (Dkt. 77 p. 2, n.1), despite the fact that BWI proffered uncontroverted evidence that it does not own or operate any hotel or employ anyone at any hotel identified in the Complaint. She fails to provide specificity such as dates, time, or facts related to her alleged trafficking at the hotel and makes no attempt to establish BWI's conduct or knowledge regarding her alleged trafficking. The First Amended Complaint is an ill-conceived crusade against hotel brands, not the traffickers or actual hotel operators or owners who she chose not to sue, and it should be dismissed.

### I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BWI.

Plaintiff's Response claims BWI failed to provide "documentary evidence" in support of its position that the Court lacks personal jurisdiction. *See* Dkt. 77 at p. 3, n.2. First, it is plaintiff,

not BWI, who bears the burden of establishing personal jurisdiction. Second, this claim is patently false and calls into question whether plaintiff's Response was made in good faith. Public records the Court can consider from Arapahoe County and the membership agreement with the property owner likewise shows that BWI does not own, operate, control or supervise this location or employ anyone at the hotel show that BWI does not own the property identified in the Complaint. *See* Dkt. 71-1 – 3. Plaintiff acknowledges the Court may consider these materials (Dkt. 77 at p. 3), yet fails to address them, and instead relies on conclusory assertions and superseded caselaw.

For example, Plaintiff cites *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187 (Colo. 2005), a case decided almost a decade before the Supreme Court refashioned its general jurisdictional analysis in *Diamler AG v. Bauman*, 571 U.S. 117 (2014) and *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). In *Archangel*, the Colorado Supreme Court declined to extend specific personal jurisdiction over out of state defendants, but found general personal jurisdiction based on one defendant's purported ownership of a gas station within the state. *Id*. at 1201. Plaintiff's reliance on *Archangel* is improper. Under *BNSF*, a plaintiff must establish that the defendant is "at home" in the forum state to assert general jurisdiction. *See BNSF*, 137 S. Ct. at 1553. Contrary to *Archangel* and Plaintiff's Response, general jurisdiction does not exist merely because an out-of-state corporation does business in the forum, even if that business is extensive or it has continuous and systematic activity in a state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see BASF Corp. v. Willowood, LLC* 359 F. Supp. 3d 1018, 1027 (D. Colo. 2019) (defendant not subject to Court's general jurisdiction as it was not "at home" in Colorado, as it lacked incorporation or headquarters in Colorado,); *Goodwin v. Hatch*, 2018 U.S. Dist. LEXIS 80773 at *11 (D. Colo. May 14, 2018) (same). Thus, Plaintiff's references to Best

Western's contacts in Colorado are unavailing to satisfy her burden of establishing personal jurisdiction. As for specific jurisdiction, plaintiff has made no showing that this lawsuit arises out of BWI's contacts with the forum.

## II. PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE TVPRA CLAIM.

The Complaint asserts a uniform laundry list of conclusory allegations against each defendant instead of specific facts against BWI. *See* Dkt. 71 at pp. 7 – 8. Plaintiff alleges no facts that BWI had any contact with or knowledge of plaintiff or her traffickers, or that BWI witnessed any signs of abuse or indicators of sex trafficking. Plaintiff's Response also fails to address crucial arguments raised in BWI's Motion, including the use of shotgun pleadings. Plaintiff's failure to rebut these arguments constitutes her concession on these matters and the Court should dismiss the Complaint based on these pleading deficiencies. *See Cole v. New Mexico*, 58 Fed. Appx. 825, 829 (10th Cir. 2003) (failure to address issue in response to Motion to Dismiss constitutes waiver); *see also Bock v. Salt Creek Midstream LLC*, 2020 U.S. Dist. LEXIS 124531 at *42 (D. N.M. July 15, 2020) ("the failure to respond to an argument raised in a motion constitutes consent to grant the motion to extent associated with that particular argument.").

### A. Plaintiff's Response Abandons Her TVPRA Section 1591 Theory.

Plaintiff's First Amended Complaint asserts two claims against BWI under the TVPRA: (1) a claim that BWI **participated** in the trafficking of J.L. in violation of Section 1591 (*see* Dkt. 65 at ¶ 146) and (2) a claim that BWI **financially benefited** from J.L.'s trafficking in violation of Section 1595. *Id.* at ¶ 147. Plaintiff's Response only addresses the latter, (the "beneficiary" theory under Section 1595) and appears to abandon her Section 1591 theory. This is confusing, contradictory, and underscores why the Complaint should be dismissed.

### B. Plaintiff First Amended Complaint Cannot Allege Liability Under the TVPRA.

As to the substance of her claims, Plaintiff's Response is riddled with misstatements about the law and ignores caselaw that undermines her theories of liability. For example, in *S.J. v. Choice Hotels International, Inc.*, 19-cv-6071, Dkt. 66 (E.D.N.Y. July 20, 2020), the District Court recently ruled that holding a hotel brand liable under the Plaintiff's theories "makes no sense," stating:

> But plaintiff's proposed application of §1595's "should have known" standard directly to the hotel franchisors goes one step too far. Specifically, plaintiff argues that she "is only required to show that Defendant[s] 'should have known' that sex trafficking was occurring on [their] property under a negligence standard." However, to conclude that franchisors like Wyndham, Howard Johnson, Inc., and Choice Hotels are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess." Indeed, under plaintiff's theory, the liability of franchisors — which are further removed from the sex trafficking than the actual hotels are — would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general. *S.J.*, 19-cv-6071, Dkt. 66 at *5 (internal citations omitted).

The *S.J.* Court reasoned that knowledge or willful blindness of general sex trafficking probably does not satisfy the *mens rea* requirement of the TVPRA. That is, "because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA." *Id.* The Court further stated the statutory language of the TVPRA does not contain a responsibility to train hotel staff about warning signs or what to if such signs appear. *Id.*; *accord B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-cv-00656, Dkt. 80 at p. 11 ("To be clear, the Court does not read section 1595 of TVPRA

[to] requir[e] hotels or their franchisors to affirmatively stop sex trafficking."). For these and the following reasons her TVPRA claims fail.

### 1. BWI did not "knowingly benefit" from J.L.'s trafficking.

Plaintiff's Response claims BWI knowingly benefitted from J.L.'s trafficking in violation of Section 1595 because it "receives a percentage of the gross room revenue" generated by its franchisees, collects royalty payments, and chose not terminate its contact with the hotel location identified in the complaint. Dkt. 77 at p. 8 – 9. BWI does not receive a percentage of the gross room revenue from the hotel identified in the Complaint and would have no basis to terminate its agreement if it had no knowledge of human trafficking allegedly occurring at the hotel. Numerous courts hold that receipt of hotel room rental profits does not constitute a "knowing benefit" under the TVPRA. *L.W. v. Hilton Worldwide Holdings, Inc.*, 4:19-cv-4172 at Dkt. 38, p. 25 (S.D. Texas Mar. 26, 2020) ("I think the limits [of the 'knowingly benefit' requirement] are [the franchisors] should have known about what was going on it the hotel"); *Id*. at p. 28 ("[Congress] did not put the 'should have known' [requirement] on the benefit itself."); *C.K. v. Wyndham Hotels & Resorts, Inc.*, 3:19-cv-1412 at Dkt. 126, p. 20 (M.D. Fla. July 10, 2020) (establishing the 'knowingly benefit' element depends on whether defendant "knew or should have known that there was a sex trafficking venture.").

Plaintiff relies on *Gilbert v. United States Olympic Committee*, 2019 U.S. Dist. LEXIS 166957 at *48 – 49 (D. Colo. Sept. 27, 2019) for the proposition that a defendant need not have benefited overtly from the trafficking venture to be liable under Section 1959. *See* Dkt. 77 at p. 9. *Gilbert*, however, addresses application of Section 1595 only as to an underlying claim of forced

labor and services under Section 1589(a). *Gilbert*, 2019 U.S. Dist. LEXIS 166957 at *15 – 17. There are no allegations in this case about forced labor.

### 2. BWI did not participate in the sex trafficking "venture" of J.L.

Plaintiff claims that BWI participated in a "venture" with Plaintiff's trafficker by virtue of the trafficker using the hotel. Dkt. 77 at pp. 10-12. This allegation does not constitute a "venture." Participation in a criminal sex trafficking venture under Section 1595(a) requires the commission of an affirmative, overt act to further the alleged trafficking. Nonfeasance or failing to intervene cannot impose liability. *See, e.g., United States v. Afyare*, 632 F. Appx. 272, 386 (6th Cir. 2016); *Bistline v. Parker*, 918 F.3d 849, 874 (10th Cir. 2019). *See also* Dkt. 71 at p. 13. Without explanation, plaintiff claims the four recent rulings from the Northern District of Georgia where TVPRA claims were dismissed (*see Jane Doe 1 v. Red Roof Inns, Inc.*, 1:19-cv-3840 at Dkt. 282 (N.D. Ga. Apr. 13, 2020); *Jane Doe 2 v. Red Roof Inns, Inc.*, 1:19-cv-3841 at Dkt. 275 (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc.*, 1:19-cv-3843 at Dkt. 201 (N.D. Ga. Apr. 13, 2020); *Jane Doe 4 v. Red Roof Inns, Inc.*, 1:19-cv-3845 at Dkt. 182 (N.D. Ga. Apr. 13, 2020) were incorrectly decided (*see* Dkt. 77 at p. 11). She also relies on caselaw concerning direct liability under Section 1591, such as *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013). *See* Dkt. 77 at p. 11. In that case, unlike here, the plaintiff pled specific facts concerning the defendants' actual knowledge of the plaintiff's sexual abuse, including the allegation that the defendants were instructed by a codefendant to refer plaintiff to the codefendant for financial assistance, which the codefendant would use as leverage to elicit sexual favors; the Court held those allegations of actual knowledge supported an inference of participation in a venture covered by Section 1595. *Jean-Charles*, 937 F. Supp. 2d at 288. The allegations in the Complaint are nothing like those in *Jean-*

*Charles*. There is no evidence BWI rented any rooms to anyone, or that the hotel knew it was renting rooms to any traffickers. Thus the allegations are insufficient to establish BWI engaged in a venture with plaintiff's traffickers. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-cv-00656, Dkt. 80 at pp. 8 – 9. (N.D. Cal. July 30, 2020)  (allegations of defendants' general awareness of sex trafficking throughout the United States was insufficient to establish "participation in venture" element for imposing direct TVPRA civil liability).

### 3. BWI did not know and could not have known of J.L.'s trafficking.

Plaintiff relies on two Southern District of Ohio cases (*M.A. v. Wyndham Hotels and Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, 2019 U.S. Dist. LEXIS 211090 (S.D. Ohio Dec. 6, 2019)) for the knowledge element of her claims. According to plaintiff, BWI "knew or should have known" that sex trafficking occurred at the hotel identified in the First Amended Complaint because BWI allegedly failed to implement certain sex trafficking prevention policies and training for its independently owned and operated hotels. *See* Dkt. 77 at p. 13. First, Plaintiff has not alleged facts as to how BWI knew or should have known plaintiff was being trafficked. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-cv-00656, Dkt. 80 at pp. 9 – 10 (N.D. Cal. July 30, 2020) (theory that **franchisee hotel staff** knew or should have known of plaintiff's trafficking was insufficient to support direct theory of TVPRA civil liability against corporate brand defendants.). Second, as several courts have held, franchisors or brands such as BWI are too far removed from plaintiff's theory of liability to establish this element of the TVPRA. *See*, *e.g., S.J. v. Choice Hotels International, Inc.*, 19-cv-6071, Dkt. 66  at *5. ("to conclude that franchisors…are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on a franchisee's property unjustifiably bridges the scienter gap

between "should have known" and "might have been able to guess."); *Jane Doe 1 v. Red Roof Inns, Inc.*, 1:19-cv-3840, Dkt. 282 at p. 9 ("the fact a franchisor may conduct inspections of a franchised property by itself is insufficient to impart knowledge of trafficking activity upon a franchisor or that a franchisor should have known of such trafficking activity.").

Further, *M.A.* and *H.H.* are distinguishable, as those plaintiffs alleged facts of actual knowledge. In *M.A.*, the plaintiff alleged a particular hotel employee ignored her pleas and screams for help. *M.A.*, 425 F. Supp. 3d at 962. In *H.H.*, the plaintiff alleged hotel staff of a particular defendant discovered her tied to a guest room bed and chained up in the bathroom, but ignored her pleas for help and did nothing to rescue her. *H.H.*, 2019 U.S. Dist. LEXIS 211090 at *3. Here, plaintiff has made no such allegations against BWI.

### C. The First Amended Complaint Does Not Plausibly Allege Direct Liability.

Plaintiff's argument that BWI is directly liable for plaintiff's trafficking under Section 1595 is meritless. She declares war on the hotel industry, arguing that corporate brands stand in the best position to combat sex trafficking. *See* Dkt. 77 at p. 14. However, as the United States Judicial Panel on Multidistrict Litigation recently recognized in denying plaintiffs' requests for centralized litigation of TVPRA claims (including this case), hotels are not monolithic. *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020). She has not alleged that she or her traffickers interacted with any BWI employees during her alleged trafficking[1]. Neither her Complaint nor Response plead or proffer evidence that BWI had knowledge of *her* trafficking;

---

[1] Plaintiff cites to *Licari v. Best Western Int'l.*, 2013 U.S. Dist. LEXIS 97725 (D. Utah July 12, 2013) to support her theory of direct liability. Dkt. 77 at p. 15. But in that case the District Court determined that BWI as a corporate brand, could not be held directly liable for plaintiff's Legionnaire's disease, as it did not owe a duty of care to the hotel guests. *Id*. at *19- 20.

they merely allege generalized knowledge that sex trafficking occurs throughout the hotel industry. *Cf. Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) (allegations **actual knowledge** of the plaintiff's sex trafficking and **active participation** in a trafficking venture supported claim for direct liability under TVPRA).

### D. The First Amended Complaint Does Not Plausibly Allege Indirect Liability.

As the TVPRA is silent on application of a standard of vicarious liability, the Court should analyze plaintiff's claim for vicarious liability under federal common law. *See Meyer v. Holley*, 547 U.S. 280, 285 (2003). The Tenth Circuit's common law on agency holds that when a franchisor or brand does not have the right to control the premises, no agency relationship exists, and thus the franchisor may not be held liable for civil claims. *Lockard v. Pizza Hut*, 162 F.3d 1062, 1070 (10th Cir. 1998); *see Thornton v. JOBEC, Inc.*, 2019 U.S. Dist. LEXIS 20821 at *5 – 6 (D. Colo. Feb. 8, 2019) (Brimmer, J.).

BWI's Motion to Dismiss describes its relationship with the hotel identified in the First Amended Complaint and provides public records and a copy of its membership agreement (which the Court can consider on a motion to dismiss) to verify its position. BWI's Motion also cites a host of applicable caselaw establishing use of a corporate logo, advertising, central reservation system, participation in rewards programs, or implementing franchisor policy manuals and standards does not create an agency relationship for the purposes of tort liability. *See* Dkt. 71 at pp. 6 – 7. This is consistent with other courts' analyses in the context of TVPRA claims. For example, the *S.J.* Court held:

> [P]laintiff only sets forth facts tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand. Thus, to the extend [sic] that they aren't mere legal conclusions, these allegations, even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised such complete

control over the day-to-day operations of the franchisee's business that its purported independence may be fairly dismissed as a fiction.

*S.J.*, 19-cv-6071, Dkt. 66 at * 7.

In *C.K. v. Wyndham Hotels & Resorts, Inc.*, 3:19-cv-1412 at Dkt. 126, p. 17-18 (M.D. Fla. July 10, 2020), the Court recently dismissed a plaintiff's claims of direct liability and vicarious liability with prejudice based on apparent agency and alter ego. Plaintiff's counsel in that case, the same firm as herein, withdrew the direct liability, apparent agency, and alter ego causes of action, after being questioned by the Court on the topic *Id*. If she does not do so here, they should be dismissed.

## CONCLUSION

For the foregoing reasons and those in its Motion, BWI respectfully requests the Court grant its motion and dismiss the First Amended Complaint with prejudice.

Dated: August 3, 2020              Respectfully Submitted,


                              By:        */s/ Donald E. Lake, III*
                                    Donald "Tripp" E. Lake, III
                                    Karen L. Campbell
                                    LEWIS BRISBOIS BISGAARD & SMITH LLP
                                    1700 Lincoln Street, Suite 4000
                                    Denver, Colorado 80203
                                    Phone: (303) 861-7760
                                    Fax:    (303) 861-7767
                                    Email: Tripp.Lake@lewisbrisbois.com
                                    *Attorneys for defendant Best Western International, Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 3rd day of August 2020, I presented the foregoing was filed electronically by uploading to the CM/ECF system which will send notification of the filing to a counsel of record.

                   /s/ *Donald E. Lake, III*
                   Donald E. Lake, III