IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03713-PAB-STV

J.L., an individual,

        Plaintiff,

v.

BEST WESTERN INTERNATIONAL, INC.;
HYATT CORPORATION;
WYNDHAM HOTELS AND RESORTS, INC.; AND
MARRIOTT INTERNATIONAL, INC.

        Defendants.

**REPLY BRIEF IN SUPPORT OF DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's opposition to Marriott International's Motion to Dismiss the First Amended Complaint (ECF No. 73; "Opposition" or "Opp.") fails for three principal reasons. *First*, Plaintiff relies on a construction of the TVPRA that turns that statute on its head, advocating liability for those who fail to affirmatively prevent criminal sex trafficking, instead of those who knowingly participate in such trafficking. Opp. at 1-5. Ironically, the "recent, well-reasoned, opinions" cited in the Opposition reject Plaintiff's untenable construction.

*Second*, Plaintiff's reliance on Marriott International's supposed "constructive knowledge" of sex trafficking is equally flawed. The "split" in authority (Opp. at 6) over construing the TVPRA is immaterial to Plaintiff's claim against Marriott International. Plaintiff's Amended Complaint ("FAC") fails whether civil liability turns on the commission of an overt act, or on mere proof that a defendant "should have known" of J.L.'s trafficking. Two weeks ago, a federal court

1

adopting the latter position explained that Plaintiff's reading of the TVPRA "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels, Int'l Inc.*, No. 19-6071, ECF No. 66, at *8 (E.D.N.Y. July 20, 2020) (hereinafter, "*S.J.*"). In other words, even if "constructive knowledge" suffices (Opp. at 6), the TVPRA requires knowledge of "the *particular* sex trafficking venture" that exploited J.L., not merely "an abstract awareness of sex trafficking in general." *S.J.* at *8. Critically here, all allegations specific to J.L.'s trafficking refer to unrelated hotels and hotel brands—not the Sheraton or Marriott International. FAC ¶¶ 106-30. The same TVPRA claims in a similar complaint were recently dismissed in the Middle District of Florida where plaintiff's counsel *conceded* that the complaint did not state a direct claim against the franchisors. *C.K. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No: 3:19-cv-1412-j-34-MCR (M.D. Fla.), ECF No. 125 (July 7, 2020).

*Third*, Plaintiff's theory of indirect liability fares no better. Because none of the allegations in the FAC state a colorable claim against the Sheraton hotel itself, vicarious liability cannot be imputed to Marriott International even assuming a principal-agent relationship. The Opposition fails to explain any pleading of actual control over the particular instrumentality of the harm or even day-to-day control over the Sheraton. Instead, it emphasizes irrelevant allegations relating to the *Best Western* hotel (Opp. at 14), ignoring the absence of allegations suggesting control over the *Sheraton* as well as the federal authorities dismissing similarly deficient pleadings.

I.   **Marriott International Is Not Directly Liable To J.L. Under The TVPRA.**

    A.   **The TVPRA Does Not Impose An Affirmative Duty To Police Sex Trafficking.**

The crux of the Opposition is that Congress intended, by amending the TVPRA, to effect a radical "paradigm shift" by regulating "the entire hospitality industry." Opp. at 3-4. Plaintiff goes

2

so far as to allege that the TVPRA requires businesses like Marriott International to "take steps to prevent sex trafficking on their hotel properties . . . ." Opp. at 4. Citing no supporting authority or statutory history, the Opposition invokes, as an ostensible analog, Title VII—a statute which prohibits discrimination on the basis of race, religion, sex, or national origin, which has nothing to do with this case. Opp. at 3 n.6. The Opposition relies on this strained construction because Plaintiff has alleged no plausible facts to support a TVPRA claim against Marriot International.

Plaintiff's sweeping construction of the TVPRA is plainly incompatible with the statute's text. Section 1595(a) imposes civil liability on "whoever *knowingly* benefits, financially or by receiving anything of value from *participation* in a *venture which* that person knew or should have known *has engaged in an act in violation of this chapter*)." (emphases added).[1] Thus, civil liability under Section 1595(a) requires *knowingly* (1) benefitting from and (2) participating in (3) a sex trafficking *venture*. The Opposition, however, effectively deletes the words "participation in a venture" from the statute. As other courts have held, this reading makes no sense; to give these words meaning and effect, nonfeasance cannot give rise to civil liability under the TVPRA. *See* Motion to Dismiss ("Mot."), ECF No. 70, at 8-11.

Plaintiff does not deny that her claim must be dismissed under this standard. Instead, she misplaces reliance on another line of cases, purportedly standing for the proposition that "a defendant need not commit an 'overt act' to participate in a venture and … section 1595 does not require the defendant's actual knowledge of participation in sex trafficking itself." Opp. at 7-10. In fact, these cases undermine Plaintiff's reading of TVPRA.

---

[1] The "chapter" referred to is Chapter 77 of Title 18 of the United States Code, *i.e.*, 18 U.S.C. §§ 1581 et seq., including sex trafficking.

3

For example, in *A.B. v. Marriott International, Inc.*, No. 19-5770 (E.D. Pa. April 22, 2020), ECF No. 21-1 (hereinafter, "*A.B.*"), the court explained:

> We disagree with [plaintiff] to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels …to affirmatively stop the trafficking.

*Id.* at 11. Moreover, the *A.B.* court explained that, if the plaintiff had alleged "only general conduct in the hotel industry," such as the following:

> inartfully includ[ing] numerous allegations regarding the problem of sex trafficking generally, the use of hotel and motel rooms as a venue for trafficking, efforts by private organizations and the Department of Homeland Security to combat human trafficking, and news reports on sex trafficking incidents involving other victims and other hotels. If A.B. made only these allegations, we may agree with Marriott.

*Id.* at 26. The court went on to describe allegations pertinent to *A.B.'s trafficking.*

In stark contrast, the FAC here relies precisely on "inartfully" pleaded allegations regarding *general* conduct in the hotel industry: statistics, news articles, and policy reports on human sex trafficking (FAC ¶¶ 33-82), generalities concerning franchisors' alleged "control" over the hospitality industry (FAC ¶¶ 83-99), and alleged awareness of prostitution crimes committed in other states (FAC ¶¶ 100-04).  None of these general allegations relates to the alleged wrongdoing carried out against J.L. by her trafficker.  What's more, none of the allegations regarding J.L. or her trafficker (FAC ¶¶ 106-30) relate to Marriott International or the Sheraton.

### B.   Even Constructive Knowledge Suffices, the FAC Does Not Plead Allegations Suggesting Marriott International Should Have Known of J.L.'s Trafficking

Plaintiff is even more mistaken in asserting that the authorities cited in her Opposition hold that a defendant may be liable without knowledge of the *particular* sex trafficking venture which harmed the plaintiff.  Opp. at 7-10.  Under any accepted reading of the TVPRA, the courts have

4

required, at a bare minimum, actual or constructive knowledge of the sex trafficking of the specific plaintiff.  Indeed, just two weeks ago, in dismissing a plaintiff's TVPRA claim against franchisors, one federal court, after adopting Plaintiff's favored line of authority, nonetheless explained:

> [T]o conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess."  Indeed, under plaintiff's theory, the liability of franchisors – which are further removed from the sex trafficking than the actual hotels are – would be much easier proven than the liability of the hotels themselves.  This would make no sense.  If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general.
>
> The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a particular sex trafficking venture. The statutory text speaks in singular terms – "participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter." 18 U.S.C. § 1595(a) (emphases added). Therefore, knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA. Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA . . . .

*S.J.* at *8 (emphases added). Similarly, plaintiff's counsel in another of the TVPRA claims based on complaints that are nearly identical to the FAC here conceded that the complaint did not state a direct TVPRA claim against Marriott International and other hotel franchisors.  *See C.K. v. Wyndham Hotels & Res., Inc., et al.*, 19-cv-01412-MMH-MCR, ECF No. 125, Order (M.D. Fla. Jul. 7, 2020).  Ironically, while the Opposition falsely avers that Marriott International asks the Court to "convert the well-settled pleading standard of plausibility into a probability" (Opp. at 2), it is actually Plaintiff who asks the Court to go well beyond even the most generous possible reading of the TVPRA by converting the "should have known" standard into a conceivably "might

5

have been able to guess" standard.  As the *S.J.* Court pointed out, this reading makes no sense and leads to perverse results, making it more difficult for plaintiffs to prove claims against the actual hotels where they were trafficked than against distant, attenuated franchisors.

Consistent with this rationale, and contrary to the Opposition's suggestion, it comes as no surprise that in none of Plaintiff's cited authorities did the defendant lack actual or constructive knowledge of the "particular sex trafficking venture" that victimized the plaintiff.  *See, e.g.*, *Bistline v. Parker*, 918 F.3d 849, 874 (10th Cir. 2019) (co-conspirators developed a scheme for the express purpose of concealing the "forced labor and ritual rape of young girls"); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (co-conspirators exchanged "high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances" that suggested they were aware of the "abusive treatment" of the plaintiff as a "sex slave"); *H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019) (a "member of the hotel housekeeping staff … discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being trafficked and despite the Plaintiff's desperate pleas for help, the staff person ignored her"); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019) (co-defendants formed an enterprise for the express purpose of concealing their co-conspirators' rape of the plaintiffs, including by "making false and corrupting statements to Congress."). Plaintiff's cases are readily distinguishable on the "participation" and scienter elements, *regardless* of which construction of the TVPRA this Court applies.

Thus, it is false that Marriott International requires this Court to apply "criminal standards to a civil action" in order to obtain a dismissal of Plaintiff's TVPRA claim.  Opp. at 6.  Instead, the Court need only apply the well-settled pleading standards and the TVPRA to the FAC.

6

Focusing on the allegations regarding J.L. and her trafficker, the pleading contains merely a single reference to a time when J.L. "arrived at the Sheraton with three much older men" – an apparent typographical error, as the balance of allegations in *that same paragraph* (and the subsequent paragraphs) refer to events occurring at a Best Western hotel. FAC ¶ 125. While several accusations are leveled at other hotels and franchisors, conspicuously, neither Marriott International nor the Sheraton appear again anywhere in J.L.'s account. FAC ¶¶ 106-30.

Counsel for Marriott International previously contacted Plaintiff's counsel before filing its Motion to Dismiss the *original complaint* as required by Local Rule 7-1, identified the potential misstatement in then ¶ 74, now ¶ 125, and inquired whether Plaintiff would amend the complaint to revise the error. Plaintiff's counsel did not respond, nor does the Opposition offer any response to this fatal defect. Having now received and declined at least two opportunities to remedy the complete lack of allegations against Marriott International or the Sheraton, Plaintiff's sole claim against Marriott International (Count Four) should be dismissed with prejudice.

    **C.**    **Plaintiff's Theory of Successor Liability Fails.**

To the extent Plaintiff relies on a successor liability theory, her claim fails for the same reasons as those stated above: nothing in the FAC states a plausible TVPRA claim against Marriott's predecessor, Starwood Hotels and Resorts Worldwide, Inc. The FAC states that Marriott International acquired Starwood in 2016, the same year Plaintiff's trafficking ended. FAC ¶¶ 7, 22(a).[2] Before then, Starwood owned the Sheraton brand and the local hotel was part of the

---

[2] The FAC states that Plaintiff was trafficked for one month in 2016. FAC ¶ 7. While it does not explicitly state whether her trafficking occurred before or after Marriott International acquired Starwood that same year, the allegation that Marriott International "retains successor liability for the wrongful acts of" Starwood suggests that it occurred before the acquisition.

Starwood franchise system. Despite acknowledging that Marriott International is liable only as Starwood's successor entity (SAC ¶ 22(a)), Plaintiff fails to plead any relevant facts to *Starwood*'s liability where the threshold for successor liability is showing *predecessor* liability. "Successor corporations are liable" under Colorado law if "(1) the successor expressly or impliedly assumes [the predecessor's] liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the successor is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability." *Bd. of Cnty. Comm'rs of Cnty. of Park v. Park Cnty. Sportsmen's Ranch*, *LLP*, 271 P.3d 562, 572 (Colo. App. 2011) (citation omitted)

Instead of pleading any basis for successor liability (or even including a count for successor liability), Plaintiff repeatedly focuses on Marriott's alleged acts and omissions with respect to crimes that may well have occurred when Marriott International had no connection to the Sheraton brand. Marriott International cannot plausibly be held liable under an agency theory for the actions of the staff of a local hotel within Starwood's franchise system in 2016. Nor could it have knowingly participated in or benefitted from J.L.'s trafficking, under any theory, at that time.

## II.     Marriott International Is Not Indirectly Liable To J.L. Under The TVPRA.

The FAC alleges an agency relationship with the Sheraton at which J.L. was allegedly trafficked. (FAC ¶ 104.) As Marriott International previously explained, it is questionable at best whether the TVPRA extended civil liability to franchisors based on the alleged participation by staff of a franchisee. *Cf. Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (dismissing aiding and abetting claim under Section 1595(a) and finding secondary liability unavailable where the statute is silent). The Opposition assumes without argument that Colorado rather than federal agency law applies. Opp. at 11-12. Analyzing vicarious liability based on a

federal statute, however, a court considers the federal common law of agency. *Meyer v. Holley*, 537 U.S. 280. 285 (2003). "Applying the principles set forth in *Meyer*, the relevant inquiry in determining vicarious liability is whether the relationship between principal and agent is that of master-servant or independent contractor." *QVC, Inc. v. Resulty, LLC*, 159 F. Supp. 3d 576, 590 (E.D. Pa. 2016). And in the context of a franchisor/franchisee relationship, no master-servant relationship may be found unless the franchisor exerts actual control over the day-to-day operations of the franchisee and controls the specific instrumentality of the harm to the plaintiff. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998) (Pizza Hut was not vicariously liable for Title VII violations of franchisee because it did not control the franchisee's day-to-day employment decisions). The FAC fails to establish such control by Marriott International over the local Sheraton hotel at the time of Plaintiff's alleged trafficking in 2016.

*First*, in an effort to show that "Marriott exercises control over member hotels," the Opposition inserts a block quote purporting to represent a *Best Western* franchise agreement. Opp. at 14. Marriott International has no affiliation with Best Western and the information is immaterial to Marriott. The Best Western hotel is a franchisee of a different defendant in this case. Allegations or argument regarding the extent of control exercised by Best Western over *its* franchisees cannot form the basis for liability of Marriott International.

*Second*, Plaintiff relies on a franchise agreement which was not cited in the pleadings, deals with a different hotel brand, and it has nothing to do with the Sheraton in 2016. Opp. at 13-14 n.16. Even if this Court were to consider the agreement, this too does not support an agency theory. The lengthy block quotes refer to Marriott International's rights relating to standards, training, inspection, and the like—*not* the management of day-to-day operations. Yet Colorado law is clear

that only the latter can give rise to a franchisor's vicarious liability. *See*, *e.g.*, *Corrales v. Days Inn Worldwide, Inc.*, No. 04-CV-149, 2005 WL 4655135, at *1 (D. Colo. Dec. 5, 2005).

*Third*, the Opposition ignores the agency cases cited in Marriott International's Motion to Dismiss. These cases are instructive because they (1) applied principles of agency law similar to the federal standard and (2) were decided on a motion to dismiss. *See N.T. v. Taco Bell Corp.,* 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019); *Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015); *Cha v. Hooters of Am.*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012). The FAC's generic allegations regarding Marriott International's "ongoing and systemic right of control" (FAC ¶ 104.g.) are "prime examples of the type of conclusory allegations that are insufficient, under *Twombly* and *Iqbal*, to state a plausible claim."

## CONCLUSION

Accordingly, Marriott International respectfully requests that this Court dismiss the Plaintiff's claim against it in its entirety and with prejudice.

Dated: August 3, 2020

Respectfully submitted,

*s/ Kathryn A. Reilly*
Kathryn A. Reilly
Chuan "CiCi" Cheng
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: reilly@wtotrial.com
cheng@wtotrial.com

Attorneys for Defendant Marriott International, Inc.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on August 3, 2020, I electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                          *s/ Claudia Jones*